Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/26/2020 09:07 AM CDT

Harvey G. Prentice and Teresa S. Prentice,
appellees, v. Desire Steede, also known
as Desire Staples, appellant.

___ N.W.2d ___

Filed May 19, 2020.    No. A-19-1014.

1. **Protection Orders: Injunction: Appeal and Error.** A protection order
   is analogous to an injunction. Accordingly, the grant or denial of a pro-
   tection order is reviewed de novo on the record.
2. **Criminal Law: Statutes.** Nebraska's stalking and harassment statutes
   are given an objective construction, and the victim's experience result-
   ing from the perpetrator's conduct should be assessed on an objec-
   tive basis.
3. **Criminal Law: Judgments.** Under Nebraska's stalking and harassment
   statutes, the inquiry is whether a reasonable victim would be seriously
   terrified, threatened, or intimidated by the perpetrator's conduct.
4. **Pleadings: Trial: Evidence.** A prima facie case may be established by
   a form petition and affidavit, but the petition and affidavit cannot be
   considered as evidence until offered and accepted at the trial as such.
5. **Protection Orders: Proof.** An ex parte order does not relieve the peti-
   tioner of the burden to establish by a preponderance of the evidence the
   truth of the facts supporting a protection order.
6. **Protection Orders: Pleadings: Evidence.** Neb. Rev. Stat. § 28-311.09
   (Reissue 2016) was amended operative January 1, 2020, and now
   provides that the petition and affidavit shall be deemed to have been
   offered into evidence at any show cause hearing, and the petition and
   affidavit shall be admitted into evidence unless specifically excluded by
   the court.
7. **Statutes: Time.** Procedural amendments to statutes are ordinarily appli-
   cable to pending cases, while substantive amendments are not.
8. **Statutes: Words and Phrases.** A substantive right is one which creates
   a right or remedy that did not previously exist and which, but for the
   creation of the substantive right, would not entitle one to recover. A

procedural amendment simply changes the method by which an already existing right is exercised.

9. **Statutes.** A substantive law commonly creates duties, rights, and obligations of a party, whereas a procedural law prescribes the means and methods through and by which substantive laws are enforced and applied.

10. **Protection Orders: Pleadings: Evidence: Proof.** The statutory amendment to Neb. Rev. Stat. § 28-311.09 (Reissue 2016) affects the substance of the claim because it changes the duty and obligation of a petitioner to prove his or her claim by offering the petition and affidavit into evidence, or otherwise testifying to the contents of such petition and affidavit, after which the respondent would then have the opportunity to object, cross-examine, or present his or her own case in defense.

Appeal from the District Court for Douglas County: Marlon A. Polk, Judge. Reversed and remanded with directions.

James R. Place, of Place Law Office, for appellant.

No appearance for appellees.

Pirtle, Bishop, and Welch, Judges.

Bishop, Judge.

## I. INTRODUCTION

Desire Steede, also known known as Desire Staples (Desire), appeals from a harassment protection order entered by the Douglas County District Court that extended an ex parte harassment protection order against her for the protection of Harvey G. Prentice and Teresa S. Prentice until June 3, 2020. Desire claims there was insufficient evidence to support the protection order. Upon our de novo review of the record, we reverse, and remand with directions to vacate the protection order.

## II. BACKGROUND

### 1. Petition and Affidavit for Ex Parte Harassment Order

On May 31, 2019, pursuant to Neb. Rev. Stat. § 28-311.09 (Reissue 2016), the Prentices filed a petition and affidavit to

obtain a harassment protection order against Desire for their protection. Harvey and Teresa were both named as petitioners in the case caption, but only Harvey signed the document. The affidavit included the following allegations: On May "24-25," Desire "threatened to do bodily harm and/or directly or indirectly cause or otherwise contract and/or direct other unknown persons to terminate the life of Teresa Prentice (see attached transcripts)." Five other civil court case numbers and captions were listed in the entry; all captions included the name "Staples" and/or the name "Steede," but none included the name "Prentice." On May "24-27," Desire "threatened to do bodily harm and/or directly or indirectly cause or otherwise contract and/or direct other unknown persons to terminate the life of Harvey Prentice (see attached transcripts). Rev. Harvey Prentice has been referred to by [Desire] as 'dead man preaching' (see attached documents)." And on May 24, Desire "vowed to either directly or indirectly contract with and or cause unknown persons or entities to cause the destruction of Ebenezer Baptist Church located at [an address on] Fowler Ave, Omaha, NE," and Desire "also made lewd and sexually inappropriate comment[s] directed toward Harvey Prentice 25 May 2019 (see attached documents)."

Attached to the petition and affidavit were several pages of screenshots of text messages, most coming from a certain cell phone number. There are handwritten notations, in what appear to be the same handwriting as the petition and affidavit, next to the text messages. We include a sampling of the text messages here. A text message from May 24, 2019, at 9:26 a.m. reads:

U trying to help that sad excuse of a pile of shit name Earl! . . . You didn't help me get my son back you garbage trash ho!!! Fuk u and your swirvel head husband! I will find you and destroy you and I will snatch your breath away from you for helping this dog! As far as I can see Omari is of no good to me look like his pathetic father! U will not see me coming you old bitch!!!!

A text message from 9:28 a.m. reads, "I will have your broke ass church destroyed and leveled to a rubbled pile of dirt bricks you Yello ho! Fuck u and die u and Earl!!!!" A text message from 9:43 a.m. reads, "I'll beat yo ass dude!!! . . . [F]uk u and die!!!! U and ur ugly ass wife! . . . I will be com to destroy u for not helping me!!!" A text message from less than 1 hour later reads:

> This is Desiree's mother! Stop contacting my child and mind your own business! You will really get hurt meddling in our affairs! Earl is not your concern and Omari is not of your concern. Go fuck off! We tried to be nice about it all and you and your sorry ass husband blew us off! If you step to this I will get you and will waste no time watching you bleed out!

The handwritten notations next to that text message read: "Never contacted Desiree, Desiree called Harvey on/about Mar 1, 2019, to see if I knew where Earl lived. Had no contact with him for 3-6 mos prior"; and, "Never contacted mother or daughter or any member of the Starks family Steed family." A text message from May 25 at 3:33 a.m. reads, "This is Desire[.] Earl is going back to jail for putting his hands on me!!! I will be laughing at u and him and when I'm done u wil be next!!!! Try me! I came back for Mr. Williams I will come back for u too! U will die!" A text message from 1:03 p.m. that day reads, "This is Dierra Bish!!!!! . . . Earl ass can't stop my sister from smoking weed and doing what the fuck we wanna do! Bitch please! Church is over! And so are u! Bitch u carry an expiration date!"

## 2. EX PARTE ORDER AND
## REQUEST FOR HEARING

On June 3, 2019, the district court issued a 1-year ex parte harassment protection order. Desire was enjoined from imposing any restraint upon the person or liberty of Harvey and Teresa; harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of Harvey and Teresa; or telephoning, contacting, or otherwise communicating with

Harvey and Teresa. The order stated that if Desire wished to appear and show cause why the order should not remain in effect for a period of 1 year, she could return the request for hearing form provided.

On July 1, 2019, the same day Desire was served with a copy of the ex parte harassment protection order, she filed a request for a hearing. The hearing was scheduled for July 29. On July 25, Desire filed a resistance to the ex parte harassment protection order alleging that the text messages attached to the petition and affidavit were not transmitted by her, nor were they transmitted on her behalf by other persons. She further alleged that the cell phone number appearing on the text messages did not belong to, and had never belonged to, her and was not associated with her cell phone. She asked that the ex parte harassment protection order be dismissed immediately because it was "based on false information." Desire asked to be awarded reasonable attorney fees and court costs.

### 3. Show Cause Hearing

The show cause hearing took place on July 29, 2019. The Prentices appeared pro se, but Desire appeared with counsel. No exhibits were offered or received into evidence. After Harvey, Teresa, and Desire were sworn in, the district court asked the Prentices to help the court understand their connection, if any, to Desire. Harvey stated:

> [O]ur connection with her is through her . . . estranged husband, Earl Staples. There is an ongoing feud between them over the custody of the child. Earl . . . was a keyboard player in my church. . . .
>
> The reason we are here now is because not only as the pastor of the church but as trying to be a friend to [Earl], to try to help him. I even tried to work with [Desire] and her husband . . . to try to get them to talk [about their relationship and save their marriage].
>
> . . . Essentially, what happened is, [Desire] called me in March, I believe, of this year to find out where Earl

was living. I didn't know. . . . Well, the child was in
[Earl's] custody, and he refused to return the child to her
to do the visits or whatever it was, and I told him that
was wrong. . . .

Well, essentially, he's angry at me, and she's angry at
me because she thinks that I was hiding [Earl] or I knew
his whereabouts. I had no idea where — Because he
moved from our church to some other church, and I lost
contact with him. . . . He finally contacted me, and he
said he wanted to come back. I said, Sure, you can come
back and play for the church. But after all of these text
messages —

Harvey stated that "the messages threatened me and my wife,
threatened to burn down the church." When the court asked who
received the text messages, Harvey and Teresa said that they
both received them. The court acknowledged it had reviewed
the messages. When the court asked why they believed the
messages came from Desire, both Harvey and Teresa pointed
out that Desire "stated her name." Harvey said the messages
"had to come from her or somebody who knew her," because
"[t]here is no other way." Harvey then said:

And because of this, we've had to increase our measures
of security at our church and our home because we can't
take the risk that this person is not — she's already . . .
I got a call at 3 o'clock in the morning on a . . . Sunday
morning, it was Earl. He called me because Desire and
her uncle and her sister and some other people were at
his house after him, and he called me. I didn't know what
to do. I called the police, because where he was staying,
I couldn't get there fast enough.

So her whole thing with me is, she's angry with Earl,
and since I was the pastor at the church where he was
attending and trying [sic] befriend him to help him come
to grips that you have to share custody of your son with
the mother . . . she thinks that — or believes that I'm
her enemy. I need the protection order to stay in place

because I can't take the risk. I'm too old to be out here wrestling and fighting with people.

Desire's counsel stated it was Desire's position that the cell phone number the text messages were sent from was not associated in any way with her. Desire called two law enforcement officers who testified that during an investigation, a forensic download was done on Desire's cell phone. Thousands of text messages were able to be extracted from her cell phone, as well as the contact list; nothing in the extractions related to the cell phone number associated with the Prentice matter. During the investigation, Earl Staples was asked for his cell phone four times, but he refused.

In Desire's testimony, she denied having another cell phone besides the one she provided to law enforcement. Desire also denied that she sent, or caused to be sent, text messages to the Prentices on May 24, 25, and/or 27, 2019. On cross-examination, Desire expressed her belief that Earl was responsible for the messages.

In addressing the parties, the district court stated:

> Here's the problem, this is an unfortunate situation that these people have been put in the middle of this. They did not ask for this. I sincerely believe the police officers and the conduct of what they did and the dumping of the phones, and that that phone has absolutely no evidence that those text messages were sent . . . that the . . . cell phone that they extracted from Desire and did the download dump of has no connection to this. That, to me, has nothing to do with the fact of whether I believe that she was part of sending those text messages, from whatever number they came from, just not from that phone. That would go beyond, I think, reasonable comprehension, because I've read these text messages. They are as outrageous as any text messages I have ever read.

The court stated it was keeping the protection order in place in favor of the Prentices.

### 4. Harassment Protection Order

On July 30, 2019, the district court entered a harassment protection order directing that the June 3 ex parte harassment protection order was to remain in effect for a period of 1 year from that date. Desire's motion for new trial and/or motion to reconsider and set aside the harassment protection order was denied.

Desire appeals.

## III. ASSIGNMENTS OF ERROR

Desire assigns, restated, that the district court erred by (1) determining the petition and affidavit to obtain a harassment protection order was sufficient to enter the ex parte order and (2) determining the evidence was sufficient to support a harassment protection order.

## IV. STANDARD OF REVIEW

[1] A protection order is analogous to an injunction. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). Accordingly, the grant or denial of a protection order is reviewed de novo on the record. *Id.*

## V. ANALYSIS

### 1. Applicable Law

[2,3] At all times relevant to the district court proceedings below, § 28-311.09 provided in relevant part:

(1) Any victim who has been harassed as defined by section 28-311.02 may file a petition and affidavit for a harassment protection order . . . . Upon the filing of such a petition and affidavit in support thereof, the court may issue a harassment protection order without bond enjoining the respondent from (a) imposing any restraint upon the person or liberty of the petitioner, (b) harassing, threatening, assaulting, molesting, attacking, or otherwise disturbing the peace of the petitioner, or (c) telephoning, contacting, or otherwise communicating with the petitioner.

(2) The petition for a harassment protection order shall state the events and dates of acts constituting the alleged harassment.

. . . .

(7) Any order issued under subsection (1) of this section may be issued ex parte without notice to the respondent if it reasonably appears from the specific facts shown by affidavit of the petitioner that irreparable harm, loss, or damage will result before the matter can be heard on notice. . . . If the respondent wishes to appear and show cause why the order should not remain in effect for a period of one year, he or she shall affix his or her current address, telephone number, and signature to the form and return it to the clerk of the district court within five days after service upon him or her. Upon receipt of the request for a show-cause hearing, the court shall immediately schedule a show-cause hearing to be held within thirty days after the receipt of the request for a show-cause hearing and shall notify the petitioner and respondent of the hearing date.

The purpose of § 28-311.09, and the definition of certain terms, are contained in Neb. Rev. Stat. § 28-311.02 (Reissue 2016), which provides in relevant part:

(1) It is the intent of the Legislature to enact laws dealing with stalking offenses which will protect victims from being willfully harassed, intentionally terrified, threatened, or intimidated by individuals who intentionally follow, detain, stalk, or harass them or impose any restraint on their personal liberty and which will not prohibit constitutionally protected activities.

(2) For purposes of sections 28-311.02 to 28-311.05, 28-311.09, and 28-311.10:

(a) Harass means to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose;

(b) Course of conduct means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person.

Application of the law governing harassment protection orders has been summarized as follows:

"Nebraska's stalking and harassment statutes are given an objective construction and . . . the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007). Thus, the inquiry is whether a reasonable [victim] would be seriously terrified, threatened, or intimidated by the perpetrator's conduct. *Id.*"

*Richards v. McClure*, 290 Neb. 124, 132, 858 N.W.2d 841, 847 (2015) (quoting *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013)).

[4,5] A prima facie case may be established by a form petition and affidavit. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). But the petition and affidavit cannot be considered as evidence until offered and accepted at the trial as such. *Id*. The ex parte order does not relieve the petitioner of the burden to establish by a preponderance of the evidence the truth of the facts supporting a protection order. *Id*. The Nebraska Supreme Court has recognized that "the procedures at a show cause hearing might be less elaborate than those commonly used at civil trials, but we have concluded that 'at a minimum, testimony must be under oath and documents must be admitted into evidence before being considered.'" *Richards v. McClure*, 290 Neb. at 132, 858 N.W.2d at 848 (quoting *Mahmood v. Mahmud, supra*). Where the evidence is insufficient, the appellate courts have reversed and vacated harassment protection orders issued by lower courts. *Richards v. McClure, supra*.

## 2. Ex Parte Harassment
### Protection Order

Desire argues that the district court erred by granting the initial ex parte harassment protection order on June 3, 2019, because she contends the facts set forth in the Prentices' petition and affidavit were insufficient to enter such ex parte order. Because we determine the issue is moot, we do not address this assignment of error.

A moot case is one which seeks to determine a question which does not rest upon existing facts or rights, in which the issues presented are no longer alive. *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004).

In *State on behalf of Pathammavong v. Pathammavong, supra*, the mother challenged on appeal the trial court's order granting the father ex parte temporary custody. The Supreme Court reasoned that "whether the temporary order was granted in error was relevant only from the time it was ordered until it was replaced by the order determining [the child's] permanent custody placement." *Id*. at 6, 679 N.W.2d at 754. Accordingly, the court concluded the issue was moot and declined to address it.

Similarly in the present case, any error in the district court's ex parte harassment protection order filed on June 3, 2019, was relevant only until the court filed the harassment protection order on July 30, following the show cause hearing. Accordingly, this issue is moot and we need not address Desire's arguments with respect to the ex parte order.

### 3. Harassment Protection Order

#### (a) Evidence at Show Cause Hearing

##### *(i) Petition and Affidavit*

The Prentices' petition and affidavit for the harassment protection order was not offered or received into evidence at the show cause hearing, and thus could not be considered by the district court. See *Mahmood v. Mahmud*, 279 Neb. 390, 778

N.W.2d 426 (2010) (prima facie case may be established by form petition and affidavit, but neither will be considered as evidence until offered and accepted at trial).

[6-9] We note that during the pendency of this appeal, the Legislature amended § 28-311.09 operative January 1, 2020. See 2019 Neb. Laws, L.B. 532, § 1. The amended statute now provides in relevant part: "The petition and affidavit shall be deemed to have been offered into evidence at any show-cause hearing. The petition and affidavit shall be admitted into evidence unless specifically excluded by the court." § 28-311.09(7) (Supp. 2019). In considering whether to apply § 28-311.09(7), as amended, to this case, we note that procedural amendments to statutes are ordinarily applicable to pending cases, while substantive amendments are not. See *In re Guardianship of Carlos D.*, 300 Neb. 646, 915 N.W.2d 581 (2018).

> This is because a substantive right is one which creates a right or remedy that did not previously exist and which, but for the creation of the substantive right, would not entitle one to recover. . . . A procedural amendment, on the other hand, simply changes the method by which an already existing right is exercised. . . . Put another way, a substantive law commonly creates duties, rights, and obligations of a party, whereas a procedural law prescribes the means and methods through and by which substantive laws are enforced and applied.

*Id*. at 656, 915 N.W.2d at 587-88. See, also, *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 305 Neb. 609, 941 N.W.2d 497 (2020) (statutes covering substantive matters in effect at time of transaction or event govern, not later enacted statutes; but where amendment to statute was procedural change, it is binding upon tribunal upon effective date of amendment).

[10] At issue in this case is whether the Prentices proved by a preponderance of the evidence that Desire was harassing them. As noted above, a substantive law commonly creates duties, rights, and obligations of a party. *In re Guardianship*

*of Carlos D., supra*. The change to § 28-311.09 affects the substance of the harassment claim because it affects the duties, rights, and obligations of the parties in that it now allows the petition and affidavit to automatically be deemed offered and received into evidence, whereas previously, and at the time of the lower court proceedings in this case, the petition and affidavit had to be verbally offered and received into evidence to be considered. In other words, the change to § 28-311.09 affects the substance of the claim because it changes the duty and obligation of a petitioner, the Prentices in this case, to prove his or her claim by offering the petition and affidavit into evidence, or otherwise testifying to the contents of such petition and affidavit—something that did not happen at the show cause hearing in this case. Had the Prentices offered the petition and affidavit into evidence, or otherwise testified to the contents therein, the respondent, Desire in this case, would then have had the opportunity to object, cross-examine, or present his or her own case in defense. It would be patently unfair to circumvent the respondent's opportunity to challenge the petitioner or present his or her own case by automatically considering the petition and affidavit as evidence after the fact.

Therefore, we conclude that the amendment to § 28-311.09 which was operative on January 1, 2020, was a substantive change that was not applicable to this case. Accordingly, under the law applicable at the time of this case, the Prentices' petition and affidavit for the harassment protection order could not and cannot be considered as evidence because it was not offered or received into evidence at the show cause hearing. See *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010).

### (ii) Testimony

No exhibits were offered or received into evidence at the show cause hearing; thus, the only evidence comes from testimony. The Prentices did not testify in detail about the

contents of their petition and affidavit—and the attached text messages—which were not otherwise received into evidence. The Prentices' testimony boils down to Harvey's statement that "the messages threatened me and my wife, threatened to burn down the church"; the Prentices' statements that they both received the text messages and that Desire "stated her name"; and Harvey's statement that the messages "had to come from her or somebody who knew her," because "[t]here is no other way."

In response, Desire presented testimony from law enforcement officers that thousands of text messages were able to be extracted from her cell phone, as well as the contact list, and that nothing in the extractions related to the cell phone number associated with the Prentice matter. And in her testimony, Desire denied having another cell phone besides the one she provided to law enforcement. She also denied that she sent, or caused to be sent, text messages to the Prentices on May 24, 25, and/or 27, 2019. On cross-examination, Desire expressed her belief that Earl was responsible for the messages. And law enforcement testified that during the investigation, Earl was asked for his cell phone four times, but he refused.

### (b) Was Evidence Sufficient?

The district court clearly relied on the content of the text messages it "reviewed," but as noted previously, the petition and affidavit to which the text messages were attached was not offered or received into evidence at the hearing and could not be considered.

Upon our de novo review of the record, we find that the Prentices' testimony was not sufficient to prove by a preponderance of the evidence that Desire harassed them. See *Mahmood v. Mahmud, supra* (petitioner has burden to establish by preponderance of evidence truth of facts supporting protection order). The definition of "harass" requires a course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no

legitimate purpose. See § 28-311.02(2). Here, a claim that text messages allegedly sent by Desire "threatened" the Prentices and their church was not enough to support the harassment protection order. Because the evidence at the show cause hearing was insufficient to support the harassment protection order, the ex parte order should not have been extended.

## VI. CONCLUSION

Upon our de novo review, we conclude that the district court erred in extending the harassment protection order. We therefore reverse the judgment and remand the cause with directions to vacate the order.

Reversed and remanded with directions.