Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/29/2021 08:09 AM CDT

Keeley Brianne Hawkins, appellee,
v. Erick Delgado, appellant.
___ N.W.2d ___

Filed January 29, 2021.    No. S-20-417.

1. **Protection Orders: Appeal and Error.** The grant or denial of a harassment protection order is reviewed de novo on the record.
2. **Appeal and Error.** The grant or denial of a stay of proceedings is reviewed for an abuse of discretion.
3. **Protection Orders.** A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true.
4. **Protection Orders: Injunction: Proof.** A protection order is analogous to an injunction. A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief.

Appeal from the District Court for Douglas County: Thomas K. Harmon, County Judge. Affirmed.

David V. Chipman and Carlos A. Monzòn, of Monzòn, Guerra & Associates, for appellant.

Kristina B. Murphree and Steven J. Riekes, of Marks, Clare & Richards, L.L.C., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

An ex parte harassment protection order was entered by the trial court against Erick Delgado. Following a hearing, the order was continued. Delgado appeals. We affirm.

## FACTUAL BACKGROUND

Delgado and Keeley Brianne Hawkins are both first lieutenants in the U.S. Air Force. At the relevant time, Hawkins was stationed at Offutt Air Force Base in Bellevue, Nebraska, and Delgado was stationed at a base in Tucson, Arizona. The two dated off and on beginning in September 2017 and through the end of December 2019. At various points Hawkins tried to end their relationship, but whenever she did so, Delgado would threaten to commit suicide or to ruin Hawkins' career.

Hawkins ultimately ended the relationship on December 28, 2019. Hawkins informed Delgado, via text message, that he should not contact her and that she would "block him" on social media if he did so. In response, Delgado again threatened suicide, saying that he had "talked to God" and that he would leave her his life insurance. The next day, Delgado apologized and said he would not contact Hawkins.

A few days later, on January 3, 2020, Hawkins alleges that Delgado placed a video call to her while she was on deployment abroad. Delgado was in his closet with a noose around his neck. He told Hawkins that either she could get back together with him or he would commit suicide. Hawkins was able to contact a mutual friend who stopped Delgado from suicide. At that time, Hawkins attempted to "block" Delgado on social media.

A few days later, Hawkins received an email message at an old email account that she had not blocked. In it, Delgado expressed concern that others not find out about his most recent suicide threat. Hawkins did not reply.

Approximately 1 week later, Delgado texted Hawkins, this time using a "burner" cell phone. In his text message,

Delgado told Hawkins that he loved her, said he was trying to get assigned to Offutt Air Force Base, and asked if she had received the flowers he had sent. Delgado also told Hawkins that if she blocked the number he was using, he would just "'get another burner. Lol.'" Again, Hawkins asked Delgado to stop contacting her.

Hawkins alleges that Delgado did not stop. A few days later, on January 18, 2020, he sent her two email messages. One message read, "'Time has come. Karma.'" The other message said, "'It won't stop till it all burns. That I promise.'" A day later, on January 19, Delgado emailed, "'There is a storm coming. Afterwards there shall be the calm. Keeley you will be free from yourself and your past.'"

On January 23, 2020, Hawkins sought a no-contact order through her commanding officer in the Air Force. Reciprocal no-contact orders were issued on January 31. Within 2 days, Delgado contacted Hawkins again, telling her that the order was a "'[n]ice try'" and threatening to come to Omaha, Nebraska.

On February 3, 2020, Hawkins sought a harassment protection order from the Douglas County District Court. In support of her request, Hawkins related the above instances and further noted that she had

tried everything to get [Delgado] to leave me alone and he won't stop. At this point my entire well-being has deteriorated rapidly. My sense of safety is completely gone. I am living in fear each day, scared of what [Delgado] might do next. He knows where I live and could possibly have access to a key to my home. It had become clear to me that he had no intention of respecting my decisions, boundaries, or safety. The fear and stress of the situation has affected my ability to fall and stay asleep, my appetite is gone, and long periods of concentration is [sic] now nearly impossible.

I am scheduled to deploy in two weeks. I have to remain hypervigilant because I do not know what he

is capable of. I have had my locks re-keyed, I have noti-
fied my neighbors to call the police if he shows up at
my house, and I am getting a security system installed
this Thursday.

An ex parte order was issued that day.

On February 20, 2020, Delgado, in his own behalf, sought a
hearing on whether the ex parte order should be continued. A
hearing was set for March 19. Delgado also retained counsel,
who entered an appearance on March 4.

Meanwhile, on February 28, 2020, Hawkins filed a motion to
continue the hearing under a provision of the Servicemembers
Civil Relief Act (SCRA).[1] That motion was granted, and the
hearing was delayed to April 30, then to May 7.

The hearing took place on May 7, 2020. Hawkins and her
counsel appeared in person. Delgado did not appear, but was
represented by counsel. During the hearing, Hawkins asked
that Delgado's request for a hearing be dismissed because
Delgado did not appear in person. Delgado's counsel indicated
that Delgado was on base in Arizona, could not appear in per-
son, and but for Hawkins' objection, could have appeared tele-
phonically or by video conference. Counsel for Delgado also
verbally requested a stay under the SCRA. Finally, Delgado's
counsel argued that the ex parte harassment protection order
was unnecessary because of the military's no-contact order.

Following the hearing, the trial court entered an order gen-
erally finding that the ex parte order should continue in effect.
Specifically, the court found that because Delgado appeared
via counsel, he did not fail to appear, and that therefore,
Hawkins' motion to dismiss should be denied. The court also
found that (1) Delgado's oral motion was not a proper request
for a stay under the SCRA and accordingly denied the motion
for a stay; (2) the military no-contact order had expired on
March 31, 2020, and thus the court need not determine issues
relating to whether it and a harassment protection order could

---

[1] 50 U.S.C. § 3932 (Supp. V 2018).

both be issued; and (3) there was good cause to extend or continue the harassment protection order until 1 year from the date of the original order—or February 3, 2021.

Delgado appeals.

## ASSIGNMENTS OF ERROR

Delgado assigns that the trial court erred in (1) finding sufficient support to order the ex parte harassment protection order and (2) not staying the show cause hearing.

## STANDARD OF REVIEW

[1] The grant or denial of a harassment protection order is reviewed de novo on the record.[2]

[2] The grant or denial of a stay of proceedings is reviewed for an abuse of discretion.[3]

## ANALYSIS

*Harassment Protection Order.*

Delgado first assigns that the trial court erred in allowing the continuation of the ex parte order, contending that there was insufficient evidence to support the grant of the order.

Harassment protection orders are governed by Neb. Rev. Stat. § 28-311.09 (Supp. 2019):

> (1) Any victim who has been harassed as defined by section 28-311.02 may file a petition and affidavit for a harassment protection order as provided in subsection (3) of this section. . . .
>
> (2) The petition for a harassment protection order shall state the events and dates or approximate dates of acts constituting the alleged harassment, including the most recent and most severe incident or incidents.

Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2016) defines "[h]arass" as engaging in a "knowing and willful course of

---

[2] *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015).

[3] See *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993).

conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." Section 28-311.02(2)(b) defines "[c]ourse of conduct" as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person."

[3,4] A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true.[4] A protection order is analogous to an injunction.[5] A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief.[6]

Given the language of Nebraska's stalking and harassment statutes and the purpose announced by the Legislature for enacting the statutes, an objective construction of the statutes is appropriate, and the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis.[7]

Delgado directs this court to *Glantz v. Daniel*,[8] *Yancer v. Kaufman*,[9] and *Casaday v. Winterstein*[10] to support his contention that his conduct was insufficient to support the continuation

---

[4] *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018).

[5] *Id.*

[6] *Id.*

[7] See *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007).

[8] *Glantz v. Daniel*, 21 Neb. App. 89, 837 N.W.2d 563 (2013).

[9] *Yancer v. Kaufman*, 22 Neb. App. 320, 854 N.W.2d 640 (2014).

[10] *Casaday v. Winterstein*, No. A-17-1246, 2018 WL 4042863 (Neb. App. Aug. 16, 2018) (selected for posting to court website).

of the ex parte order. More specifically, Delgado argues that the interactions he had with Hawkins did not amount to harassment under § 28-311.02(2)(a) because he did not threaten her with physical violence, or indeed threaten her in any way. In addition, Delgado essentially suggests that his actions against Hawkins were so infrequent as to not qualify as a course of conduct under § 28-311.02(2)(b).

As an initial matter, we disagree with Delgado's assertion that he did not threaten physical violence. In two different messages sent on January 18, 2020, Delgado told Hawkins, "'Time has come. Karma,'" and also, "'It won't stop till it all burns. That I promise.'" The next day, Delgado sent another email that said, "'There is a storm coming. Afterwards there shall be the calm. Keeley you will be free from yourself and your past.'"

Viewed objectively, these messages—in particular Delgado's statement that Hawkins will be "'free from yourself'"—could be read as threatening physical harm. Contributing to the interpretation is that these messages were preceded by other messages in which Delgado threatened suicide on multiple occasions, wondered about how it was that he became a manipulator and abuser, and further indicated that he would come to Omaha. It was after these messages on January 18 and 19, 2020, that Hawkins sought a military no-contact order.

In any case, the definition of "[h]arass" in § 28-311.02(2)(a) is not limited to threats of physical violence—it also includes conduct that "seriously terrifies" or "intimidates." In fact, physical violence is only implicitly referenced in the definition of the word "harass," via the term "threatens."

We have reviewed the cases relied upon by Delgado and find them distinguishable. In two of those cases, due to mootness and an insufficient record, the merits of the appeals were not fully considered. The third case was both factually distinct as well as unpublished.

Nor does it matter that Delgado's messages were of a lesser frequency than in, for example, *In re Interest of Jeffrey K.*,[11] which included approximately 200 instances of verbal abuse. The plain language of the definition of "[c]ourse of conduct" in § 28-311.02(2)(b) notes that it includes "a series of acts over a period of time, however short."

Hawkins' application indicated that Delgado had threatened suicide prior to her ending their relationship on December 28, 2019. Thereafter, beginning on December 29, Delgado texted, emailed, or called Hawkins every few days. After Hawkins attempted to block communications from Delgado, he managed to contact her via an older email account and a "burner" phone. Hawkins then obtained a no-contact order through the military; Delgado's response was to email her to say "'[n]ice try'" and threaten to come to Omaha.

Though these exchanges lasted just over a month, they occurred every few days. Delgado went out of his way to contact Hawkins even after she blocked him and had a no-contact order entered. The contact ceased only after Hawkins obtained the ex parte harassment protection order. This constitutes a "[c]ourse of conduct"—a "series of acts" performed over the course of over 1 month, "evidencing a continuity of purpose," as required by §§ 28-311.02(2)(b) and 28-311.09.

There was sufficient evidence to support the continuation of the ex parte order. Delgado's first assignment of error is without merit.

*Stay.*

Delgado next assigns that the trial court erred in not granting his request for a stay.

We turn first to the provisions of the SCRA. The SCRA generally provides a stay in "any civil action or proceeding" where the plaintiff or defendant "is in military service or is within

---

[11] *In re Interest of Jeffrey K., supra* note 7.

90 days after termination of or release from military service" and "has received notice of the action or proceeding."[12]

In order for an application for a stay to be granted, such a request "shall include" a "letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear," and a "letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter."[13]

We have limited case law on the SCRA. In *Carmicheal v. Rollins*,[14] this court found no error in the district court's denial of a stay under the SCRA even where all requirements of the SCRA were met. There, despite filings that indicated the applicant was not available, the record showed that the applicant had, in fact, appeared at the hearing in question; thus, her ability to appear was not materially affected by her military service.

More recently, the Nebraska Court of Appeals decided *Rickert v. Rickert*.[15] That court found the requirements of the SCRA were not met where the letter from the applicant's commanding officer did not state that "current military duty prevented [the applicant] from appearing and did not state that military leave was not authorized."[16] The Court of Appeals concluded that the district court did not err in denying the application for a stay where the applicant failed to comply with the requirements set forth in the SCRA.

---

[12] 50 U.S.C. § 3932.

[13] *Id.*

[14] *Carmicheal v. Rollins*, 280 Neb. 59, 783 N.W.2d 763 (2010).

[15] *Rickert v. Rickert*, 27 Neb. App. 533, 934 N.W.2d 384 (2019).

[16] *Id.* at 541-42, 934 N.W.2d at 391.

In addressing an argument raised by the applicant in *Rickert*, the Court of Appeals acknowledged that "[c]ourts inherently possess the power to stay civil proceedings when required by the interests of justice."[17] The Court of Appeals, which had already rejected the applicant's argument on appeal for failure to comply with the SCRA, concluded that there was likewise no abuse of discretion in not granting an SCRA stay under the court's inherent authority.

A review of the record shows that Delgado did not comply with the requirements of the SCRA. Counsel referenced the SCRA at the hearing on the continuance of the ex parte order, but no written application was filed—only a verbal request was made that was limited to a reference to the SCRA. Counsel made no specific allegations about Delgado's availability, except to note that he was not present and could not travel, apparently due to travel restrictions. These verbal representations do not comply with the requirements of the SCRA.

For similar reasons, we reject any suggestion that the court should have granted a stay under the SCRA in the absence of compliance with the statute. The record supports a conclusion that such a stay was not sought until the day of the hearing and, as noted, that such a request was only made orally and was not accompanied by any explanation as to why Delgado could not appear, aside from a general assertion that he was stationed in Arizona and was unable to travel, apparently due to travel restrictions. While the provisions of the SCRA might be entitled to a liberal construction, such liberal construction is not a license to fail to comply with the primary requirements of the SCRA.

While there is some suggestion that Delgado sought permission to appear telephonically or by video conference, there

---

[17] *Id.* at 543, 934 N.W.2d at 392, citing *Schuessler v. Benchmark Mktg. & Consulting, supra* note 3.

is no request for such an appearance in the record. Moreover, at the relevant time, Neb. Rev. Stat. § 24-734 (Reissue 2016), which has since been amended, required the other party to give consent to such an appearance; apparently, no consent was given. In addition, the record before this court is devoid of any information about what Delgado might have testified to had he been allowed to appear by telephone or video conference. As such, we cannot tell what prejudice, if any, Delgado suffered as a result of his inability to appear.

Finally, we note that Delgado did not seek a continuance under any other provision of Nebraska law.[18]

We find no abuse of discretion in the trial court's denial of an SCRA stay. Delgado's second assignment of error is without merit.

## CONCLUSION

The decision of the trial court is affirmed.

AFFIRMED.

---

[18] See Neb. Rev. Stat. § 25-1148 (Reissue 2016).