Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/01/2023 09:07 AM CDT

Brandy M. Kudera and T.S.K., appellees,
v. Travis Belina, appellant.
___ N.W.2d ___

Filed July 25, 2023.    No. A-22-787.

1. **Protection Orders: Appeal and Error.** The grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court.
2. **Protection Orders.** A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true.
3. **Injunction: Proof.** A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief.
4. **Criminal Law: Statutes.** Nebraska's stalking and harassment statutes are given an objective construction, and the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis.

Appeal from the District Court for Madison County: Donna F. Taylor, County Judge. Reversed and remanded with directions.

Eric M. Hagen, of Berry Law Firm, for appellant.

Brandy M. Kudera, pro se.

Pirtle, Chief Judge, and Moore and Riedmann, Judges.

Riedmann, Judge.
## INTRODUCTION
Travis Belina appeals from a harassment protection order entered by the Madison County District Court sought by

Brandy M. Kudera on behalf of her minor son, T.S.K. We find that there was insufficient evidence to support continuing the harassment protection order and, therefore, reverse the order of the district court and remand the cause with directions to vacate the protection order.

BACKGROUND

On September 28, 2022, Kudera filed a petition and affidavit to obtain a harassment protection order against Belina for her and her son, T.S.K., who was 15 years old. Kudera described the "dates and facts of the most recent series of acts and the most severe incident or incident(s) of harassment toward the person(s) seeking protection" as follows:

Since [Belina] has been arrested there has been phone and in person contact with [T.S.K.] where he has "promised" him certain things. Due to the nature of this case and the fact my son is a minor, and the ongoing criminal case against [Belina], I do not want the in person and phone contact to continue as it could affect [T.S.K.] and the court case.

The district court granted an ex parte harassment protection order in which T.S.K. was identified as the only protected person. In the district court's order, it provided Belina the opportunity to request a hearing to show cause why the order should not remain in effect for a period of 1 year. Belina requested a show cause hearing.

At the show cause hearing, Kudera testified that the allegations in the affidavit were true. The petition and affidavit were then admitted into evidence. Kudera testified that T.S.K. worked for Belina at a feedlot for roughly 1 year and that T.S.K. and Belina had regular phone and in-person contact for roughly 1½ years. T.S.K. initially stopped working at the feedlot in February 2022, but was allowed to work "on and off" until June. Since that time, Kudera became aware that T.S.K. and Belina maintained contact. Kudera believed that after T.S.K. stopped working for Belina, Belina tried to

coerce T.S.K. to return to work for him. However, Kudera conceded that since Belina was arrested, T.S.K. and Belina had both initiated conversations with the other.

Kudera explained her reasoning for seeking the harassment protection order. She testified that she believed T.S.K. had worked in unsafe conditions without proper supervision when he was working for Belina. When T.S.K. worked for Belina, T.S.K. had issues with his grades and conduct at school, and there were two incidents when T.S.K. consumed alcohol while at the feedlot. Additionally, T.S.K. was a potential witness in a criminal case in which Belina was the defendant, which Kudera believed could negatively impact T.S.K. at school and with other children. She concluded by stating that the "open dialogue, being able — for those two being able to talk is putting [T.S.K.] in an unfair situation for the age that he is."

After Kudera's testimony, she rested. Belina moved to dismiss the harassment protection order. He argued that Kudera had not established a course of conduct that would seriously terrify, threaten, or intimidate a person, which is required for a harassment protection order. He disputed whether any of Kudera's testimony was relevant because Belina was not conversing with her and her testimony only addressed the fact that T.S.K. and Belina were communicating, which does not amount to harassment alone. The district court overruled Belina's motion to dismiss the harassment protection order for T.S.K.

Kudera was then recalled by Belina's counsel. Belina's counsel showed Kudera some screenshots of text message exchanges between T.S.K. and Belina but they were not offered into evidence. Kudera stated that the text messages between Belina and T.S.K. were "intimidating more than anything." However, after Kudera was asked which text messages were intimidating, she discussed only her distaste that Belina, who was 25 years old, was befriending her son, who was 15 years old, instead of maintaining a healthy employee-employer

relationship. She did not convey the content of any message she found intimidating.

Kudera cited an example of when T.S.K. was not allowed to work one night because his grades faltered, so T.S.K. texted Belina that he was upset with his mother for not allowing him to go to work. Kudera found Belina's response of "'Just hold your head high'" as being too friendly when he should have responded by saying "'Yes, you need to follow the rules.'" She conceded that Belina never told T.S.K. not to follow his mother's rules or that she was incorrect; rather, he just said "encouraging things."

Kudera emphasized that Belina had created an inappropriate environment where T.S.K. felt Belina was more of a friend than an employer. Furthermore, she testified that Belina often reached out to T.S.K. between 8 and 10 p.m. and after Belina had been drinking alcohol. Belina subsequently rested.

The court noted that the criminal information filed against Belina listed T.S.K. as a potential witness and that it appeared Belina was facing serious charges. It stated it was unable to locate Belina's bond conditions that may include a no contact order with the witnesses but surmised "that can be taken up in the District Court, if necessary." The court then continued the protection order, finding that Belina was "absolutely adamant" that he wanted to have contact with T.S.K. "in spite of what his mother believes." It further explained that although Belina may not be intending to terrorize T.S.K., it thought Belina "know[s] that it has bothered him, it's causing him problems and so I'm going to continue the Protection Order." Belina appeals.

## ASSIGNMENTS OF ERROR

Belina assigns two errors: The district court erred by (1) continuing the harassment protection order because the evidence presented was insufficient and (2) continuing the previously issued ex parte harassment protection order after finding that one of the material elements was not met and basing the continuation on a lower standard than permitted by law.

## STANDARD OF REVIEW

[1] The grant or denial of a protection order is reviewed de novo on the record. *Diedra T. v. Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.*

## ANALYSIS

[2,3] A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true. *Hawkins v. Delgado*, 308 Neb. 301, 953 N.W.2d 765 (2021). A protection order is analogous to an injunction. *Id.* A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief. *Id.* But the ex parte order does not relieve the petitioner of its burden at the show cause hearing. See *Prentice v. Steede*, 28 Neb. App. 423, 944 N.W.2d 323 (2020).

Under Neb. Rev. Stat. § 28-311.09(2) (Cum. Supp. 2022), a petition for a harassment protection order shall state the events and dates or approximate dates of acts constituting the alleged harassment, including the most recent and severe incident. Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2016) defines "[h]arass" as engaging in "knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." Section 28-311.02(2)(b) defines "[c]ourse of conduct" as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person."

[4] In analyzing § 28-311.02, the Nebraska Supreme Court has concluded that Nebraska's stalking and harassment

statutes are given an objective construction and that the victim's experience resulting from the perpetrator's conduct should be assessed on an objective basis. See *In re Interest of Jeffrey K.*, 273 Neb. 239, 728 N.W.2d 606 (2007). Thus, the inquiry is whether a reasonable person would be seriously terrified, threatened, or intimidated by the perpetrator's conduct. See *id.*

In *Prentice v. Steede, supra*, this court reversed a district court's order extending a harassment protection order because the evidence at the show cause hearing was insufficient to support the harassment protection order. At the show cause hearing, the affidavit and petition were not admitted into evidence, so our review was limited to the testimony of the parties. The petitioners testified they received text messages that threatened to burn down their church and that indicated they were from the respondent. The district court relied upon the content of the text messages that it had "'reviewed,'" but those messages were not offered into evidence for review by this court. *Id.* at 436, 944 N.W.2d at 332. We held that the testimony about the text messages was not enough to support a harassment protection order.

While we understand Kudera's reasoning for requesting the harassment protection order, there is nothing in the record that shows Belina's conduct would seriously terrify, threaten, or intimidate a reasonable person. No text messages were offered into evidence, and Kudera's testimony is insufficient to support a finding that Belina engaged in conduct that would terrify, threaten, or intimidate a reasonable person. Kudera testified that working for Belina had negatively impacted T.S.K.'s grades and that T.S.K. engaged in drinking alcohol at Belina's feedlot. She also discussed some concerning conduct, like Belina's texting T.S.K. at night and after Belina had been drinking alcohol, but this conduct does not amount to harassment without more context. When asked at the show cause hearing what sorts of intimidating comments Belina made toward T.S.K., Kudera discussed only T.S.K.'s disobedient

conduct and that she did not believe Belina respected the rules she put in place for T.S.K.

Although Kudera's testimony centered on the frequency of text messages sent between T.S.K. and Belina, no text messages were admitted into evidence. The only text messages discussed at the hearing were when T.S.K. asked Belina about a tractor Belina promised him and when T.S.K. told Belina that he was upset because his mother would not let him work at the feedlot. Belina responded, "'Just hold your head high.'" Kudera testified that most of the text messages sent between T.S.K. and Belina had been deleted, so there were many conversations that she did not know about. And the messages that Belina showed Kudera at the hearing were not offered into evidence, and their content is not discernible from the record.

This case is analogous to *Prentice v. Steede*, 28 Neb. App. 423, 944 N.W.2d 323 (2020), as both cases relied only upon testimony that discussed text messages broadly between the two parties but failed to establish that the text messages amounted to harassment. In *Prentice*, there was discussion about text messages threatening to burn down a church, but the testimony alone could not meet the petitioners' burden. Here, there were no text messages in the record, so we are left to examine the testimony, which fails to set forth either the content or the gist of those messages. There is nothing in Kudera's testimony that reveals conduct on the part of Belina that was terrifying, threatening, or intimidating to a reasonable person, unlike the content of the text messages in *Prentice v. Steede, supra*, which the parties described to include violence. Furthermore, Kudera never testified why Belina's text messages were intimidating to T.S.K., and considering that T.S.K. initiated some of those conversations, we question whether he found Belina's messages to be intimidating. Although there was no affidavit and petition admitted into evidence in *Prentice*, the affidavit and petition in this case

does not provide any conduct that would be considered terrifying, threatening, or intimidating to a reasonable person.

The court continued the protection order, finding that Belina was "absolutely adamant" that he wanted to have contact with T.S.K. "in spite of what his mother believes." It determined that although Belina may not have intended to terrorize T.S.K., it thought Belina "know[s] that it has bothered him, it's causing him problems." But being "bothered" and experiencing "problems" does not equate to a finding that Belina engaged in behavior that was terrifying, threatening, or intimidating. Therefore, we find there was insufficient evidence to support an order continuing the harassment protection order.

To be clear, text messages can amount to harassment in certain cases, just not in this case with the evidence provided. The Supreme Court held in *Hawkins v. Delgado*, 308 Neb. 301, 953 N.W.2d 765 (2021), that text and email messages amounted to harassment because the respondent's messages could be read as threatening physical harm. The respondent had sent the petitioner texts like "Time has come. Karma," and also, she will be "free from [her]self." *Id.* at 307, 953 N.W.2d at 769 (internal quotation marks omitted). Messages that preceded these contributed to the interpretation because the respondent had threated suicide on multiple occasions and had called and emailed the petitioner over the course of a month, despite the petitioner's blocking the respondent's phone number and seeking a no-contact order. Unlike *Hawkins*, there was no testimony in the instant case to provide context to the text messages that would lead to an interpretation that the messages would be terrifying, threatening, or intimidating to a reasonable person. Since the text messages discussed in the testimony do not show conduct that would amount to harassment, there was not sufficient evidence to continue the harassment protection order.

Belina also assigns that the district court erred in continuing the harassment protection order after finding that his conduct was not knowing and intentional, a material element

of a harassment protection order. Having found that the evidence was insufficient to continue the protection order, we need not analyze this assigned error. See *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

## CONCLUSION

Having conducted a de novo review of the evidence presented at the show cause hearing, we find that there was insufficient evidence to support an order continuing the harassment protection order. We therefore reverse the judgment and remand the cause with directions to vacate the order.

Reversed and remanded with directions.