Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/03/2023 09:05 AM CST

Diedra T. et al., appellees, v.
Justina R., appellant.
___ N.W.2d ___

Filed February 3, 2023.    No. S-22-436.

1. **Protection Orders: Appeal and Error.** The grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

2. **Protection Orders: Injunction: Proof.** A protection order is analogous to an injunction, and a party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief.

3. **Protection Orders: Proof.** The petitioner at a show cause hearing following an ex parte order has the burden to prove by a preponderance of the evidence the truth of the facts supporting a protection order. Once that burden is met, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect.

4. **Appeal and Error.** When an argument or theory is raised for the first time on appeal, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue that was never presented and submitted to it for disposition.

5. **Due Process: Words and Phrases.** While the concept of due process defies precise definition, it embodies and requires fundamental fairness.

6. **Constitutional Law: Due Process.** Generally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or

accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.

7. **Constitutional Law: Protection Orders.** Because the intrusion on a respondent's liberty interests is relatively limited, the procedural due process afforded in a protection order hearing is likewise limited.

8. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.

Appeal from the District Court for Sarpy County: George A. Thompson, Judge. Affirmed as modified.

David V. Chipman, of Monzón, Guerra & Chipman, for appellant.

Annette Farnan, of Heartland Family Service, for appellee Diedra T.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

## I. INTRODUCTION

Justina R. appeals the decision of the district court for Sarpy County, Nebraska, which continued a harassment protection order against her in favor of Diedra T. and Diedra's two minor children. Justina argues that the evidence was insufficient to support the order. She also argues that the continuation of the harassment protection order violated her due process rights because Diedra sought a domestic abuse protection order, the district court instead granted an ex parte harassment protection order, and Diedra renewed her request for a domestic abuse protection order at the show cause hearing. We affirm as modified.

## II. BACKGROUND

Justina and Diedra met in 2015 and became "best friends." Thereafter, Justina, Diedra, and Diedra's husband began

having sexual relations. Justina and Diedra agree that they never held themselves out as girlfriends, but disagree as to whether they described the relationship between Justina, Diedra, and Diedra's husband as polyamorous.

On March 30, 2022, Diedra filed a petition and affidavit to obtain a domestic abuse protection order against Justina on behalf of herself and her children. The petition alleged that Diedra ended her sexual relationship with Justina around March 2021 and "completely cut off" and blocked contact with Justina on March 15, 2022. Diedra further alleged that Justina had previously threatened to kill herself if they could not continue their sexual relationship and became "more obsessive" after Diedra ended that relationship. Diedra also alleged that after she cut off contact with Justina, Justina began texting and calling her from various phone numbers, begging Diedra to talk to her and threatening to disclose her relationship with Diedra and Diedra's husband to Diedra's employer and to kill herself. According to Diedra, Justina sent her 150 or more messages per day.

In addition, the petition alleged that Justina came to Diedra's home on March 29, 2022, and refused to leave until police ordered her to depart. Diedra alleged that she showed police her phone, which contained 63 texts, as well as missed calls, from Justina within the past 24 hours. Diedra also alleged that Justina texted and called her 10 more times on March 29 after she left Diedra's home.

The same day that Diedra's petition was filed, the district court entered an ex parte harassment protection order against Justina in favor of Diedra and the children. The order stated that Justina could request a hearing to "show cause why this order should not remain in effect" for 1 year. Justina requested such a hearing.

After a continuance, a show cause hearing was held on May 5, 2022. At the start of the hearing, the district court admitted Diedra's petition and affidavit into evidence. It also advised the parties that it was considering whether to

issue a domestic abuse protection order, continue the ex parte harassment protection order, or dismiss the matter. The district court then asked Diedra if she requested that the "ex parte [order] remain in its current fashion." Diedra responded, "Yes," and added that she was "requesting . . . that the [c]ourt consider this to be a domestic abuse protection order." Justina sought dismissal.

The district court subsequently questioned Diedra and Justina about the events described in the domestic abuse protection order petition and affidavit. Diedra testified that the information contained therein was and is true and correct and that Justina continued to contact her after the protection order was entered. Justina, in turn, testified that she went to Diedra's home on March 29, 2022, to retrieve personal belongings. Justina stated that she and Diedra had little contact while she was at Diedra's home that day, although she admitted to texting Diedra after she left. Justina also testified that she did not know exactly how many times a day she contacted Diedra, but it was fewer than 150. According to Justina, she was "very close" and an "aunt" to Diedra's children. As to whether she had a legitimate purpose for contacting Diedra or the children, Justina indicated that she had belongings at Diedra's home and that she did not "want to lose [the children] from [her] life."

Subsequently, upon direct examination by her counsel and cross-examination by Diedra's counsel, Justina answered a series of questions concerning her and Diedra's relationship and whether she ever physically assaulted or threatened Diedra and the children. Justina testified that she had not assaulted or threatened them. She also testified that she was a "nanny" to the children and that she never felt her relationship with Diedra and Diedra's husband was polyamorous.

Thereafter, the district court indicated that it was going to treat the domestic abuse and harassment protection orders "simultaneous[ly]." It invited Justina to present any witnesses or evidence that she had to contradict Diedra's allegations.

Justina stated that she had none, but that she had questions for Diedra.

Then, on direct examination by Justina's counsel and cross-examination by her own counsel, Diedra testified that Justina sent texts describing the relationship as polyamorous and asserting rights to the children based on that relationship. She also testified that there was no reason for further contact and renewed her request for a domestic abuse protection order.

In concluding, the district court asked if Diedra had any evidence that she wished to offer as to the domestic abuse protection order. Diedra indicated that she did not but asked that the court consider the testimony previously presented. The district court then requested that the parties provide briefs with their closing arguments. In so doing, the district court observed that there are "two burdens [of proof] here at the same time."

Subsequently, in her brief, Justina argued that Diedra failed to establish that they had an intimate relationship or that Diedra and the children suffered domestic abuse. Diedra, in turn, urged the court to issue a domestic abuse protection order. Diedra indicated that she sought a protection order to bar Justina from specific addresses. However, she argued that, alternatively, the harassment protection order should be continued because Justina did "not materially dispute the affidavit" or provide any new evidence.

The district court ruled in Diedra's favor as to the harassment protection order. It found that she had shown that Justina contacted her repeatedly and that police assistance was needed to "address the situation," while Justina failed to rebut or "impugn the credibility" of Diedra's allegations. However, it found that Diedra failed to meet her burden of proof as to the domestic abuse protection order. The district court ordered that the harassment protection order remain in effect for 1 year from March 30, 2022.

Justina appealed to the Nebraska Court of Appeals, and we moved the matter to our docket.

## III. ASSIGNMENTS OF ERROR

Justina assigns, restated and consolidated, that (1) the district court erred in finding that Diedra met her burden of proof for the issuance of a harassment protection order and (2) Justina was deprived of due process when the district court continued the harassment protection order after Diedra renewed her request for a domestic abuse protection order. Justina also argues that her appeal should not be found to be moot if the protection order expires before our decision on appeal.

## IV. STANDARD OF REVIEW

[1] The grant or denial of a protection order is reviewed de novo on the record.[1] In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court.[2] However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[3]

## V. ANALYSIS

### 1. Sufficiency of Evidence

Justina argues that the district court erred in continuing the harassment protection order because her conduct does not constitute "harass[ment]" as defined in Neb. Rev. Stat. § 28-311.02 (Reissue 2016). She argues that a "certain volume of calls or texts" does not in itself constitute harassment and that there was no evidence she harmed or threatened to

---

[1] *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022).

[2] *Id*.

[3] *Id*.

harm Diedra or the children.[4] Diedra counters that Justina's threats to disclose her sexual relationship with Diedra and Diedra's husband to Diedra's employer and to kill herself if she could not continue her sexual relationship with Diedra were threats under § 28-311.02.

[2,3] Before reaching the merits of the parties' arguments, we briefly review the law governing show cause hearings and harassment protection orders. A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true.[5] A protection order is analogous to an injunction, and a party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle that party to relief.[6] As such, the petitioner at a show cause hearing following an ex parte order has the burden to prove by a preponderance of the evidence the truth of the facts supporting a protection order.[7] Once that burden is met, the burden shifts to the respondent to show cause as to why the protection order should not remain in effect.[8]

Under Neb. Rev. Stat. § 28-311.09 (Cum. Supp. 2022), "[a]ny victim who has been harassed as defined by section 28-311.02 may file a petition and affidavit for a harassment protection order . . . ." Section 28-311.02(2)(a), in turn, defines the term "harass" to mean "to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." The language "seriously terrifies, threatens, or intimidates" is applied

---

[4] Brief for appellant at 9.

[5] *Hawkins v. Delgado*, 308 Neb. 301, 953 N.W.2d 765 (2021).

[6] *Id.*

[7] *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018).

[8] *Id.*

objectively, and "the evidence should therefore be assessed on the basis of what a reasonable person under the circumstances would experience."[9] Thus, the inquiry is whether a reasonable person would be seriously terrified, threatened, or intimidated by the conduct at issue.[10]

### (a) Evidence as to Diedra

We agree with Diedra that there was sufficient evidence to support continuing the harassment protection order in her favor, although our reasoning differs somewhat from that of the district court.[11] The district court emphasized Justina's "repeated contact" with Diedra when continuing the harassment protection order, finding that that contact was seriously threatening and intimidating and served no legitimate purpose. We agree with Justina that a certain number of texts or calls does not in itself constitute harassment under § 28-311.02. However, we disagree that the record here reflects only repeated, unwanted communications that "disturbed Diedra's peace."[12]

Instead, the record shows threats by Justina to "out Diedra as a queer woman to [Diedra's] employer" and to kill herself if they could not continue their sexual relationship.[13] The record also shows that Justina's texts and calls to Diedra continued after the ex parte harassment protection order was entered against Justina.[14] They were not limited to the 2 weeks immediately after Diedra broke off contact, as Justina

---

[9] *In re Interest of Jeffrey K.*, 273 Neb. 239, 245, 728 N.W.2d 606, 612 (2007).

[10] *Richards v. McClure*, 290 Neb. 124, 858 N.W.2d 841 (2015).

[11] See, e.g., *Edwards v. Estate of Clark, ante* p. 94, 982 N.W.2d 788 (2022) (appellate court may affirm lower court's ruling that reaches correct result, albeit based on different reasoning).

[12] Brief for appellant at 12.

[13] Brief for appellee at 11.

[14] Compare *Hawkins, supra* note 5 (respondent's contacts with petitioner ceased once ex parte harassment protection order was issued).

argues. Further, those texts and calls came from various phone numbers, with the apparent intent of evading Diedra's attempts to block them. In addition, the record shows that Diedra came to Justina's home on March 29, 2022, and refused repeated requests to leave. Law enforcement responded and ordered Justina to leave. However, although she departed, Justina subsequently texted or called Diedra multiple times later that same day.

It is true that Justina did not physically harm or threaten to physically harm Diedra. However, § 28-311.02 is not limited to threats of physical violence; it merely refers to conduct which "seriously . . . threatens."[15] Further, § 28-311.02 also encompasses conduct that is seriously terrifying or intimidating, as well as that which is seriously threatening. As such, viewed objectively, Justina's statements—and in particular, her statements about disclosing the details of her sexual relationship with Diedra and Diedra's husband to Diedra's employer—could be read as threatening nonphysical harm to Diedra, as well as being intimidating. Courts in other jurisdictions have treated similar statements, expressing an intent to disclose embarrassing information if the victim refused to continue a relationship or take other action, as threats.[16] In fact, in some cases, the courts have found that such threats constitute extortionate communications unprotected by the First Amendment.[17]

As to Justina's argument that her threat to disclose her sexual relationship with Diedra and Diedra's husband to Diedra's employer is not an "actionable 'threat' under [§] 28-311.02" because "[i]t is a true statement," there is no merit.[18] The only case that Justina cites in support of that proposition,

---

[15] See *id*.

[16] See, e.g., *U.S. v. Hobgood*, 868 F.3d 744 (8th Cir. 2017); *U.S. v. Petrovic*, 701 F.3d 849 (8th Cir. 2012).

[17] See *Hobgood, supra* note 16; *Petrovic, supra* note 16.

[18] Reply brief for appellant at 4.

*R. A. V. v. St. Paul*,[19] is silent on the matter, and courts in other jurisdictions have taken the opposite view.

For example, in *Altafulla v. Ervin*,[20] a California appellate court rejected the respondent's argument that because his emails to his partner's employer and other statements about her affair were "literally true," they were not abusive and could not form the basis for a domestic violence restraining order. The court disagreed, finding that the "use of arguably accurate information in a manner that causes severe emotional distress" can constitute abuse.[21] An Illinois appellate court took a similar view in *People v. Hubble*,[22] finding that in a prosecution for intimidation, it was "immaterial whether the facts threatened to be disclosed are true." We find those opinions persuasive here; it was Justina's use of the information against Diedra, and not the truth or falsity of the information, that made Justina's statement a threat.

Justina's argument that her threats to kill herself should also be disregarded, because "there was no mention of [such threats] at the [s]how [c]ause [h]earing," is similarly without merit.[23] Justina's threats to kill herself if she and Diedra could not continue the sexual relationship were discussed in Diedra's petition and affidavit for a domestic abuse protection order, which was admitted into evidence at the show cause hearing. Additionally, Diedra testified at that hearing that the information in her petition and affidavit was and is true and correct. Justina submitted nothing contradicting that evidence. Justina observes on appeal that the district court

---

[19] *R. A. V. v. St. Paul*, 505 U.S. 377, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992).

[20] *Altafulla v. Ervin*, 238 Cal. App. 4th 571, 578, 189 Cal. Rptr. 3d 316, 321 (2015).

[21] *Id*.

[22] *People v. Hubble*, 81 Ill. App. 3d 560, 564, 401 N.E.2d 1282, 1285, 37 Ill. Dec. 189, 192 (1980).

[23] Reply brief for appellant at 5.

sua sponte marked Diedra's petition and affidavit as an exhibit and entered it into evidence, with the apparent implication that that was improper. However, Justina assigned no error to the court's doing so,[24] and the Legislature amended § 28-311.09(7) in 2019 to provide that the petition and affidavit shall be deemed to have been offered into evidence in any show cause hearing and shall be admitted into evidence unless specifically excluded by the court.[25]

[4] As to Justina's argument that her texts and calls are protected by the First Amendment to the U.S. Constitution and thus "cannot be sanctioned,"[26] it is conceivable that situations could arise in which a person might say something that would, in some sense, "intimidate" or "threaten" a reasonable person, yet is protected by the First Amendment.[27] However, the question of whether § 28-311.02 can be constitutionally applied to conduct like Justina's, which included threats to disclose the details of her sexual relationship with Diedra and Diedra's husband to Diedra's employer, is not properly before the court in this case. Justina did not raise her First Amendment argument before the trial court. As such, we decline to consider it. When an argument or theory is raised for the first time on appeal, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue that was never presented and submitted to it for disposition.[28]

---

[24] See *Buttercase v. Davis, ante* p. 1, 982 N.W.2d 240 (2022) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued in brief of party asserting error).

[25] See 2019 Neb. Laws, L.B. 532.

[26] Brief for appellant at 13.

[27] See, e.g., *U.S. v. Sryniawski*, 48 F.4th 583, 587 (8th Cir. 2022) (noting that "[t]he Free Speech Clause protects a variety of speech that is intended to trouble or annoy, or make another timid or fearful" and collecting cases); *U.S. v. Yung*, 37 F.4th 70, 78 (3d Cir. 2022) (noting that "[t]he First Amendment protects at least some speech that persistently annoys someone and makes him fearful or timid" and collecting cases).

[28] *Buttercase, supra* note 24.

(b) Evidence as to Children

The situation is different as to the children; here, we agree with Justina that there was insufficient evidence. The record on appeal contains almost nothing regarding the children. Diedra's petition and affidavit for a domestic abuse protection order stated only that she removed Justina from the list of persons authorized to pick up the children from daycare because she was "worried/scared what [Justina] may do to them as [she does not] know what [Justina's] capable of." The petition and affidavit did not specifically articulate any basis for those concerns. Nor did Diedra's testimony at the show cause hearing note any specific concerns about the children beyond Justina's threat to assert rights to the children based on her polyamorous relationship with Diedra and Diedra's husband. Justina, in contrast, testified that she had a close relationship with the children, was effectively their aunt and nanny, and never harmed or threatened them. Justina's testimony here was uncontroverted, even if the district court found Justina to be generally less credible than Diedra. This evidence would not cause a reasonable person to be seriously terrified, threatened, or intimidated.

Diedra argues that under *Robert M. on behalf of Bella O. v. Danielle O.*,[29] children are eligible for protection orders where their mother is "a target of a credible threat that causes a reasonable fear for their safety."[30] Diedra is correct that in *Robert M. on behalf of Bella O.*, we affirmed the entry of a protection order in favor of a minor child even though there was "minimal" evidence that the respondent's conduct was targeted or directed at the child.[31] However, *Robert M. on behalf of Bella O.* involved a domestic abuse protection

---

[29] *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019).

[30] Brief for appellee at 11.

[31] *Robert M. on behalf of Bella O., supra* note 29, 303 Neb. at 275, 928 N.W.2d at 413.

order under the Protection from Domestic Abuse Act, Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016 & Cum. Supp. 2022). That act expressly defines the term "abuse" to include threats that "cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family."[32] We relied upon that statutory language in concluding that not only is the recipient or target of a credible threat a "victim" of abuse eligible for a domestic abuse protection order under § 42-924, so too are those family members for whose safety the target reasonably fears because of the threat.[33] However, we also found that the respondent's threat in that case actually caused the targets or recipients to reasonably fear for the child's safety.[34]

Here, in contrast, we are dealing with a harassment protection order under §§ 28-311.02 and 28-311.09. Those statutes do not include the same language about fears for the safety of family members that appears in the Protection from Domestic Abuse Act. Rather, they focus upon whether a reasonable person would be seriously terrified, threatened, or intimidated by the conduct at issue, and as we previously indicated, that standard is not met as to the children given the record here. Accordingly, we modify the harassment protection order on de novo review to exclude Diedra's minor children.

## 2. Procedural Due Process

Justina also relies on our decision in *Yerania O. v. Juan P.*[35] to argue that her due process rights were violated when the district court continued the harassment protection order against her. Justina argues that her situation was like that of the respondent in *Yerania O.*, in that she was "not aware . . .

---

[32] § 42-903(1)(b).

[33] *Robert M. on behalf of Bella O., supra* note 29.

[34] *Id.*

[35] *Yerania O. v. Juan P.*, 310 Neb. 749, 969 N.W.2d 121 (2022).

a harassment protection order was still on the table"[36] after Diedra "elected" to pursue a domestic abuse protection order at the show cause hearing.[37] Diedra counters that Justina had notice and an opportunity to be heard regarding a harassment protection order. Given the record before us, we agree with Diedra.

[5,6] While the concept of due process defies precise definition, it embodies and requires fundamental fairness.[38] Generally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.[39]

[7] With harassment protection hearings specifically, because the intrusion on the respondent's liberty interests is relatively limited, the procedural due process afforded is likewise limited.[40] Nonetheless, while the procedures required in a harassment protection order proceeding may not reflect the full panoply of procedures common to civil trials, due process does impose some basic procedural requirements.[41] Our decision in *Yerania O.* reviewed those requirements before reiterating that procedural due process in harassment protection hearings includes notice of the "ultimate theory" on

---

[36] Brief for appellant at 15.

[37] *Id.* at 14.

[38] *Yerania O., supra* note 35.

[39] *Id.*

[40] *Id.*

[41] *Id.*

which the protection order is based and a "fair opportunity to address" that theory.[42]

We decided *Yerania O.* after the Legislature amended § 28-311.09(7) in 2019 to require that the notices given to respondents regarding harassment protection orders include notification that the court may treat a petition for a harassment protection order as a petition for a sexual assault or domestic abuse protection order, if it appears from the facts that such order is more appropriate, and that the respondent shall have an opportunity to show cause why such order should not be entered.[43] The notice given to the respondent in *Yerania O.* included the statutorily required notification.[44] Nonetheless, we found that the respondent's due process rights were violated when the district court sua sponte entered a harassment protection order after the petitioner sought, and the district court heard, oral arguments regarding a sexual assault protection order.[45]

Specifically, we found in *Yerania O.* that the notice provided to the respondent did not make clear that the court could treat the petition as a request for a harassment protection order where an ex parte sexual assault protection order had already been entered against him in favor of the petitioner. Instead, the notice appeared to indicate that such action was applicable only if the parties had an opportunity to present evidence prior to the entry of the order.[46] We similarly found that the respondent had no opportunity to be heard regarding the harassment protection order because the show cause

---

[42] *Id*. at 766, 969 N.W.2d at 132. See, also, *D.W. v. A.G.*, 303 Neb. 42, 926 N.W.2d 651 (2019); *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014); *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010); *Sherman v. Sherman*, 18 Neb. App. 342, 781 N.W.2d 615 (2010).

[43] See 2019 Neb. Laws, L.B. 532.

[44] *Yerania O., supra* note 35.

[45] *Id*.

[46] *Id*.

hearing focused solely on whether the ex parte sexual assault order should be continued.[47] There was testimony and evidence concerning whether sexual assault or sexual harassment occurred, but nothing concerning harassment or domestic abuse protection orders.[48] Only after the close of evidence did the district court sua sponte refile the petition under a new case number and enter the harassment protection order.[49] However, by that time, the respondent no longer had an opportunity to be heard regarding such an order.[50]

Justina's circumstances are unlike those of the respondent in *Yerania O.* in that she had an opportunity to be heard regarding the continuation of the harassment protection order against her. It is true that Diedra renewed her request for a domestic abuse protection order at the show cause hearing. However, the record shows that both the district court and Diedra indicated that a domestic abuse protection order was being considered as an alternative to, and not in lieu of, a harassment protection order. The district court made a statement to that effect at the start of the show cause hearing. It then asked Diedra if she requested that the "ex parte [order] remain in its current fashion." Diedra responded affirmatively before "add[ing]" that she also requested that "the [c]ourt consider this to be a domestic abuse protection order." The district court subsequently indicated that it would treat the harassment and domestic abuse protection orders "simultaneous[ly]." During the hearing, the court on multiple occasions provided the parties an opportunity to offer additional evidence. At the conclusion of the hearing, it reminded the parties that there were "two burdens [of proof] here," apparently meaning one burden for each type of order under consideration. Lastly, Justina did not ask the court for

---

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

a continuance to gather additional evidence to support her claim that a protection order was not warranted. As such, Justina's argument that she was denied an opportunity for a hearing regarding a harassment protection order is inconsistent with the record and, as such, without merit.

There is similarly no merit to Justina's suggestion that *Yerania O.* requires petitioners to elect a single theory and proceed on that basis. The language that Justina quotes from *Yerania O.* about "protect[ing]" the "'due process rights of both parties . . . by trying the case only on the theory elected by the petitioner'"[51] comes from our description of the opinion of the Nebraska Court of Appeals in *Sherman v. Sherman.*[52] As such, its use of the singular "theory" should be construed as reflecting the facts of that case, rather than impliedly prohibiting petitioners from proceeding under multiple theories. It is inherent in our jurisprudence that a respondent in a protection order proceeding must be notified of the grounds upon which a protection order is sought and provided with an opportunity to respond to those grounds at the show cause hearing.[53] Here, that is what happened.

### 3. Mootness

Finally, Justina argues that her appeal should not be dismissed as moot if the harassment protection order against her expires before we issue our decision. She argues that the public interest exception to the mootness doctrine applies because the district court made an error of law in continuing the harassment protection order against her and because this is a case of first impression insofar as the district court continued the harassment protection order after Diedra renewed her request for a domestic abuse protection order. Justina also urges us to adopt the reasoning of other courts that cases

---

[51] Brief for appellant at 15 (quoting *Yerania O., supra* note 35).

[52] See, e.g., *Sherman, supra* note 42.

[53] See, e.g., *D.W., supra* note 42.

involving expired protection orders are not moot because such orders have negative collateral consequences which persist after the order expires.

[8] Because the harassment protection order in the present case has not yet expired, we need not address those questions. An appellate court is not obligated to engage in an analysis that is not needed to adjudicate the controversy before it.[54]

## VI. CONCLUSION

There was sufficient evidence to continue the harassment protection order in favor of Diedra, and the district court did not abridge Justina's due process rights by doing so. However, because the record shows insufficient evidence to warrant continuing the harassment protection order as to the children, we modify the district court's order on de novo review to exclude the children.

Affirmed as modified.

---

[54] See *Acklie v. Nebraska Dept. of Rev., ante* p. 28, 982 N.W.2d 228 (2022).