IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

DITTER V. KUSH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

RODNEY A. DITTER, APPELLEE,

V.

A.J. KUSH, APPELLANT.

Filed June 20, 2023.    No. A-22-801.

Appeal from the District Court for Platte County: DENISE J. KRACL, Judge. Affirmed.

Thomas E. Horgan and Connor W. Orr, of Orr & Horgan, P.L.L.C., for appellant.

Clark J. Grant, of Grant & Grant, for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

RIEDMANN, Judge.

INTRODUCTION

A.J. Kush appeals from a harassment protection order entered by the Platte County District Court in favor of Rodney A. Ditter. Finding the record refutes Kush's arguments on appeal, we affirm.

BACKGROUND

The parties own adjoining property and have been involved in an ongoing boundary dispute for approximately 2 years. On April 4, 2021, Ditter sued Kush and sought temporary and permanent injunctions, as well as damages, resulting from Kush's alleged trespass onto Ditter's property and removal of the boundary fence and various trees and commission of other wrongful acts. Eventually, a settlement was reached whereby the parties were to meet and agree about remediation of the property with Kush to coordinate the completion of the work.

- 1 -

*Altercation.*

On September 18, 2022, Ditter approached Kush on Kush's property to talk with him about the replacement of the fence. An altercation ensued, which Ditter claimed Kush initiated and in which Ditter was injured. The day after the altercation, Ditter was admitted to the hospital, where he stayed for 5 days due to a concussion. With Ditter's help, his wife then filled out a petition and affidavit to obtain a harassment protection order against Kush.

The preprinted petition and affidavit contain a section that requests the petitioner to list the approximate dates and facts of the most recent series of acts and the most severe incident or incidents of harassment. Ditter recounted that he and Kush had been in a land dispute for over 2 years, and Kush had failed to complete any of the work that was a part of their settlement. When Ditter attempted to discuss the work with Kush, Kush tripped Ditter, shoved him to the ground, and repeatedly slammed his head against the ground. Then after releasing him, Kush kicked Ditter in the stomach.

Upon review of the petition and affidavit, the district court found that Ditter had met the burden for issuance of an ex parte harassment protection order under Neb. Rev. Stat. § 28-311.09 (Cum. Supp. 2022). The ex parte harassment order stated that unless it was otherwise dismissed or modified by the court, the protection order was granted for one year from the date of the order. The ex parte order informed the respondent that if he wished to appear and show cause why the order should not remain in effect, he could request a hearing. Kush requested a hearing, which was scheduled for September 30, 2022.

*Show Cause Hearing.*

At the hearing, the district court received the petition and affidavit to obtain a harassment protection order into evidence. Ditter was first called to affirm that the protection order was filed on his behalf, and everything stated in the protection order was true and accurate to the best of his knowledge. The district court then allowed Kush to present his case to show cause why the order should not remain in effect.

Karla Kush, Kush's wife, testified to her version of the events leading up to the altercation. She identified Ditter as the aggressor and claimed he entered onto their property in a menacing manner. She recounted that Ditter threw the first punch, after which Kush took him to the ground and held him there to "get him calm."

Karla also recalled two instances where Ditter had trespassed on their property. Karla and her husband had discovered Ditter's trespassing via their game cameras that they had set up on their property. To support her accusations, photographs from the game cameras were admitted that showed people—who Karla claimed worked for Ditter—on their property. There was also a picture of Ditter on his four-wheeler from another game camera.

Kush confirmed that the previous settlement agreement related to the boundary dispute had a provision that required Ditter and him to meet and agree on certain work to complete on Ditter's property. Specifically, the agreement called for Kush to coordinate the completion of agreed upon work with Ditter. Kush testified that he hired a surveying company to mark the property lines with stakes for fence construction, but also admitted to removing the stakes to mow.

When Ditter testified, he refuted many of the contentions made by Karla and Kush. He testified that the day of the altercation he discovered all the corner stakes dedicated to fence

construction were removed. So Ditter walked onto Kush's property after trying to verbally get his attention with no success. Ditter testified that Kush approached him once he noticed Ditter standing off to the side and Kush started yelling at him.

Ditter stated it was Kush who started the fight, and that Kush knocked him out, so he was not sure how long he was on the ground or whether the altercation was filmed. He admitted that he walked onto Kush's property the day of the altercation but argued that he had walked from his property from the west, contrary to Karla and Kush's testimony. He also denied making any threatening motions toward Karla, but could not remember if he said anything to her.

Ditter mentioned multiple times in his testimony that because he had blacked out, he did not remember the entire altercation. He was in the hospital 5 days after the altercation because of his concussion and was still on medication for it at the time of the hearing.

Video taken by Karla's son was also offered into evidence. The video is 37 seconds and shows the end of the altercation. In the video, Karla twice tells Kush to get off Ditter. It did not show Kush kicking Ditter as he got up from the ground. Ditter testified that the video did not capture Kush kicking him in the gut.

At the end of the hearing, the district court took the matter under advisement. It ultimately continued the harassment protection order for 1 year. Kush appeals.

## ASSIGNMENTS OF ERROR

Kush assigns that the district court erred in determining (1) that the petition and affidavit to obtain harassment protection order was sufficient to enter an ex parte harassment protection order and (2) there was sufficient evidence to enter a harassment protection order.

## STANDARD OF REVIEW

The grant or denial of a protection order is reviewed de novo on the record. *Diedra T. v. Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id*. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of facts rather than another. *Id*.

## ANALYSIS

Kush first assigns that the district court erred in determining that the petition and affidavit to obtain a harassment protection order were sufficient to enter an ex parte harassment protection order; however, he failed to argue this assigned error in his brief. Therefore, we do not consider this first assignment of error. See *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021) (alleged error must be both specifically assigned and specifically argued).

Kush argues in his brief that the district court erred by incorrectly placing the burden of proof on him, instead of Ditter, at the show cause hearing. However, Kush did not assign this as error, so we do not address this argued, but unassigned, error. See *id*.

Kush's second assignment of error is that the district court erred by finding there was sufficient evidence to enter a harassment protection order; however, he limits his argument to two alleged deficiencies. First, he argues that because Ditter did not remember the altercation, he could

not meet his burden of proof, and second, that Ditter failed to show a course of conduct or series of events. We address each basis separately.

*Inability to Recall Altercation.*

Kush argues that because Ditter did not remember the altercation, he could not meet the prima facie burden for a protection order.

A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true. *Mahmood v. Mahmud*, 279 Neb. 390, 778 N.W.2d 426 (2010). A protection order is analogous to an injunction. *Hawkins v. Delgado*, 308 Neb. 301, 953 N.W.2d 765 (2021). A party seeking an injunction must establish by a preponderance of the evidence every controverted fact necessary to entitle the claimant to relief. *Id.*

The facts and testimony from the hearing refute Kush's first argument. Although Ditter testified that he did not remember some of the details of the altercation, he testified to the events leading up to the altercation, Kush initiating the altercation, and getting up to leave after the altercation. Ditter affirmed at the beginning of the hearing that everything stated in the affidavit and petition was true and accurate to the best of his knowledge. The affidavit and petition alleged that Ditter and Kush had been in an ongoing land dispute for over 2 years, that Kush had not completed any of the work the settlement agreement required, that Kush removed some of the boundary stakes, and Kush had attacked Ditter.

Contrary to Kush's argument, Ditter's inability to remember all aspects of the altercation did not negate his ability to present the salient facts underlying his request for a protection order. We find no merit in Kush's first argument.

*Series of Acts.*

Second, Kush argues that because Ditter did not establish a course of conduct or series of acts, he was not entitled to a harassment protection order. Kush contends that the protection order relied on a one-time altercation and Ditter failed to testify about any course of conduct or series of acts.

Under § 28-311.09(2), a petition for a harassment protection order shall state the events and dates or approximate dates of acts constituting the alleged harassment, including the most recent and severe incident. Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2016) defines "[h]arass" as engaging in "knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." Section 28-311.02(2)(b) defines "[c]ourse of conduct" as a "pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including a series of acts of following, detaining, restraining the personal liberty of, or stalking the person or telephoning, contacting, or otherwise communicating with the person."

Kush's argument focuses solely on the absence of a "course of conduct or series of acts," and concludes that the "affidavit in the application for the harassment protection order is encompassed by a one-time altercation that took place on [Kush's] land after [Ditter] trespassed thereon." Brief for appellant at 10. While it is true that the affidavit details only the physical

altercation, Kush's argument ignores the reference to the 2 year dispute and the other evidence presented at the hearing.

The evidence, including the petition and affidavit, Ditter's testimony, and the exhibits, portray a series of acts or course of conduct by Kush. The petition and affidavit establish a 2 year dispute between the parties. Ditter testified to Kush removing the fence posts, Kush's conduct that led to Ditter's suit, and the eventual settlement, which all establish that multiple acts occurred. The exhibits received into evidence included a copy of Ditter's complaint for temporary and permanent injunction filed in April 2021, which describes a series of events including Kush's destruction of the boundary fence, grading of soil on Ditter's property, removal of trees from Ditter's property, the filling of a natural watercourse on Ditter's property, the placing of fence wire, wood waste, and debris on Ditter's property, and the removal of permanent and temporary survey markers from the mutual boundary. There is no time limit required to establish a series of acts, as § 28-311.02(2)(b) specifically states "a pattern of conduct composed of a series of acts over a period of time, *however short*. . . ." (Emphasis added.) Regardless, it is clear by the allegations of the complaint for the permanent and temporary injunction that Kush's actions constituted a series of acts that occurred over a 2 year period as alleged in Ditter's petition and affidavit for a harassment protection order.

Because Kush argues only Ditter's lack of recollection and failure to assert a series of acts or course of conduct as the bases for his assigned error that the evidence was insufficient to support a harassment protection order, we need not address the sufficiency of the evidence to support any other requirement of § 28-311.09.

CONCLUSION

Having considered the evidence presented at the show cause hearing, we reject Kush's arguments that Ditter's lack of recollection precluded the continuance of the harassment protection order and that Ditter failed to identify a series of acts. We therefore affirm the district court's order continuing the harassment protection order for one year.

AFFIRMED.