IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

RAMOS V. KAREN G. H.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JONATHAN F. RAMOS, APPELLANT,

V.

KAREN G. H., APPELLEE.

Filed April 1, 2025.    No. A-24-509.

Appeal from the District Court for Platte County: JASON M. BERGEVIN, Judge. Affirmed.

Jonathan F. Ramos, pro se.

No appearance by appellee.

RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

Jonathan F. Ramos, pro se, appeals from the Platte County District Court's order denying his request for a harassment protection order against Karen G. H. We affirm.

## BACKGROUND

Karen is the daughter of Ramos' girlfriend, Edith H. In the summer of 2023, Ramos moved into the residence where Karen and Edith resided. On April 24, 2024, Ramos filed a "Petition and Affidavit to Obtain Harassment Protection order" against Karen. He alleged that on January 31, Karen asked him to pay rent, but he had no money. Ramos texted the "manager" to request a delay in rent, but "Karen say no, pay now." On February 2, "due Karen harassment, Manager called Karen in explain. Karen got angry at me." Karen's boyfriend wrote to tell Ramos to "[p]ay now or I will grab[] your clothes to throw out and your body. I don't play game!"

- 1 -

From February 9 to March 1, 2024, Ramos alleged, "Karen request to help us rent" and she told Edith that Ramos needed to move out of the house. On April 5, Karen and Edith told him he had to pay "rent again." He told them he had no money. He claimed Edith, Karen, and Karen's boyfriend, took his work boots. On April 6, Karen told him he could not "park front," to which he responded, "I'm first[] come here." On April 7, Edith was sick, and Ramos stayed with her. He brought beers and used his phone to play games. Edith told him to go to the bedroom because Karen and her boyfriend were coming. From the bedroom, Ramos tried to get Edith's attention but "Karen hold on Edith away." Ramos called the sheriff's office. Ramos stayed in the bedroom "without foods" because of Karen and her boyfriend. On April 8, Ramos called the sheriff's office; he claimed they told Karen to let him "park car on front" and to clean up the yard. This made Karen angry, and she told Edith to get Ramos out of the house. Ramos refused to leave "because of civil rights" and "that's why Sheriff told Karen no kick out." On April 9, Ramos saw a receipt from Karen's bank showing a large balance, causing Ramos to file a small claims action against Karen related to her trying to force him out of the house. Ramos alleged that on April 10, "Retaliation against me by false statements 'Harassment' – I never bother, and I requested." On April 11, Ramos received "letter to protect order." He claimed, "Karen harassment Edith by force false report." He alleged that Edith told him she "filed against [him] Domestic Violence [b]ecause [he] sued Karen." He claimed he "didn't know anything" and that he was homeless.

A hearing on Ramos' petition took place on June 7, 2024. Ramos and Karen both appeared pro se. "American Sign Language Interpreters" were available for Ramos and "Spanish Language Interpreters" were available for Karen. Although dates did not always correspond precisely with events as laid out in the petition, Ramos generally testified about the same incidents raised in his petition. Karen testified that she never harassed Ramos.

The district court determined that there was insufficient evidence to support the entry of a harassment protection order, specifically that Karen did not harass Ramos "as that term is defined" in Neb. Rev. Stat. § 28-311.02(2)(a) (Reissue 2016). An order was entered on June 7, 2024, denying Ramos' request for a harassment protection order and dismissing with prejudice his petition.

Ramos appeals.

ASSIGNMENTS OF ERROR

Ramos assigns that the district court (1) "abused its discretion in reinstating the case and disregarding Appellant's argument that the 'committed against his disability' specified in Neb. Rev. Stat. § 28-110 [(Reissue 2016)], was inapplicable"; (2) erred in "dismissal Appellant by Protection Order Neb. Rev. Stat. § 28-311.02.(1).(a).(b).(c).(d).[,]"; and (3) "demonstrated personal bias and prejudice against [him] because of his disability[,] [a]nd 18 USC Ch. 73: Obstruction [of] Justice." He also claims (4) that the "Judge's labeling of Appellee as 'deceitful, underhanded, and fraudulent' [i]ndicates a deep-seated antagonism which would make fair judgment impossible."

We observe here that in some instances Ramos' references to appellant and appellee erroneously implicate the wrong party. We will proceed in our analysis with the understanding that, when read in context with factual assertions or arguments being made, some of Ramos'

- 2 -

references to the "Appellee" refer to himself and some of his references to "Appellant" refer to Karen.

## STANDARD OF REVIEW

The grant or denial of a protection order is reviewed de novo on the record. *Diedra T. v. Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id.* However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.*

## ANALYSIS

The argument section of Ramos' brief is disjointed and difficult to follow; Karen did not file a brief. As will be discussed below, several parts of Ramos' "argument" appear to reference matters in other cases, which are not relevant here.

Ramos' first assignment of error is that the district court abused its discretion in "reinstating the case and disregarding [his] argument that the 'committed against his disability' specified in Neb. Rev. Stat. § 28-110, was inapplicable." Brief for appellant at 5. In support, he first contends that the district court's "labeling" of him as "'deceitful, underhanded, and fraudulent' [i]ndicates a deep-seated antagonism which would make fair judgment impossible." *Id.* at 9. He then, without any further discussion, states, "Neb.28-311.02.(a). Stalking and harassment; legislative intent; terms, defined." Brief for appellant at 10. He next states, "[Karen] forced the clothing expenses, food expenses, and illegal immigrant." *Id.* He closes his argument in this section with the following:

On April 5-9, 2024, [Karen] has stalking at [Ramos] for the money. . . . Because of [Ramos] called sheriff against [Karen] on April 5, 2024. The evidence does that Respondent stalking at Petitioner. On April 5, 2024 and on February 2, 2024 and January 30, 2024.

Some of Ramos' arguments appear to be related to matters raised in the other appeals he references, such as "Karen vs. Ramos (A-24-0431) and Edith vs[.] Ramos (A-24-0466)." Brief for appellant at 8. There is nothing in the record in the present appeal where the district court labeled or described Ramos as "'deceitful, underhanded, and fraudulent.'" Nor is there anything in the present record involving any discussion of § 28-110 [right of person to live free from violence or destruction of property regardless of person's race, color, religion, ancestry, national origin, gender, sexual orientation, age, or disability]. Nor is there anything in Ramos' argument above that explains why the evidence did not support the court's decision to deny his request for a harassment protection order. He simply asserts that Karen was "stalking" him for money, apparently because Ramos called the "sheriff against" Karen.

Section 28-311.02(2)(a), defines the term "harass" to mean "to engage in a knowing and willful course of conduct directed at a specific person which seriously terrifies, threatens, or intimidates the person and which serves no legitimate purpose." While Ramos presented evidence that he was being pressed to pay rent and certain expenses while living in the residence occupied

by Karen and Edith, there was no evidence that he was seriously terrified, threatened, or intimidated by Karen. Further, requests for Ramos to contribute to household rent or expenses served a legitimate purpose. We find no merit to this assigned error.

Ramos next addresses his assigned error that the district court "demonstrated personal bias and prejudice" against him. Brief for appellant at 5. He claims that the "[j]udge's labeling of [Ramos] and [his] actions as 'deceitful, underhanded, and fraudulent' [i]ndicates a deep-seated antagonism which would make fair judgment impossible." *Id.* at 11. As noted above, there is nothing in the present record showing that the court labeled Ramos' actions as he alleges, or that the court otherwise treated Ramos inappropriately. We find no merit to Ramos' claim that the court demonstrated bias in the present case.

Finally, we note that although Ramos assigned error to the district court's dismissal of his request for a protection order, he does not make any argument specific to that alleged error, other than as addressed above. Accordingly, we decline to address this assigned error further. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party assigning the error. *Uhrich & Brown Ltd. Part. v. Middle Republican NRD*, 315 Neb. 596, 998 N.W.2d 41 (2023).

CONCLUSION

Upon our de novo review of the record, we find no error in the district court's decision to deny Ramos' request for a harassment protection order against Karen.

AFFIRMED.