IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

BAXTER V. BAXTER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DONITA BAXTER, APPELLANT,

V.

DEVERON BAXTER, APPELLEE.

Filed January 13, 2026.    No. A-25-305.

Appeal from the District Court for Lancaster County: MATTHEW O. MELLOR, Judge. Affirmed.

Mark T. Bestul, of Legal Aid of Nebraska, for appellant.

No appearance for appellee.

WELCH and FREEMAN, Judges.

WELCH, Judge.

### INTRODUCTION

Donita Baker appeals from the Lancaster County District Court's dismissal of the renewal of an ex parte domestic abuse protection order against Deveron Baxter. For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

On March 18, 2024, Donita filed a petition and affidavit to obtain a domestic abuse protection order against her husband Deveron. The petition stemmed from a March 8 incident where Deveron allegedly came to her home, assaulted her, and was arrested. The district court issued an ex parte domestic protection order that excluded Deveron from the following locations: the Saturday farmers market, the Sunday farmers market, Pius X high school, Saratoga elementary school, and the Indian Center.

- 1 -

On March 18, 2025, Donita filed a petition and affidavit to renew the 2024 domestic abuse protection order against Deveron. The reasons given by Donita for seeking a renewal of the domestic abuse protection order included that Deveron had violated the protection order several times over the past year; Deveron had been arrested and charged several times in the last year for violation of the protection order and domestic violence; Deveron continued to attempt to intimidate her with threats; Deveron joined the board of the Indian Center, even though that location was included in the protection order as a restricted location; and Deveron had attended community events, despite being aware that Donita and her children had been attending those events for years. In the section to list additional events that had occurred since the protection order was issued, Donita listed that Deveron had been arrested for domestic violence; he had violated the protection order; he attended community events that were also attended by Donita and refused to leave, which resulted in Donita leaving for safety reasons; he joined the Indian Center board to intimidate her so she would not go to the Center; and he threatened to travel to South Dakota when Donita and the children would be there. Also on March 18, Donita filed a request for a modification of the domestic abuse protection order in which she sought to exclude Deveron from additional locations.

On March 18, 2025, the court issued an ex parte domestic abuse protection order renewal, which continued Deveron's exclusion from the following locations: the Saturday farmers market, the Sunday farmers market, Pius X high school, Saratoga elementary school, and the Indian Center. Following the issuance of the ex parte order, a hearing was set based upon Deveron's request.

The contested hearing was held in April 2025. During that hearing, both Donita and Deveron provided testimony, and Donita's petition and affidavit to renew the domestic abuse protection order was admitted as an exhibit. Donita testified that since the entry of the protection order in March 2024, there had been several new occurrences that caused her to fear for her safety, including that Deveron approached her in an aggressive or intimidating manner during child exchanges on three occasions; Deveron contacted her extended family and friends to request that Donita meet him at other locations; Deveron attended, and refused to leave, a powwow; and a physical assault of Donita that occurred at her home. She stated that since the original protection order was entered, she had called the police on Deveron "a handful of times." Donita also requested that the protection order be modified to reflect her new home address and a new school.

Donita testified that neither party was on the board of the Indian Center when the initial protection order was entered but after the protection order was entered, Deveron joined the Indian Center board of directors, which Donita believed was "to use that position of authority as a way to intimidate me into not going there or feeling safe enough or my kids feeling safe enough to go. So that he could, I guess, bully us or intimidate me and then go to those events."

In response, Deveron explained that he had previously been on the Indian Center board of directors for 3 years and that a board member nominated him again without his knowledge, that he is Native American and Donita is not, and that he was very involved with the Indian Center, which was an important part of Native American life in the area. Deveron stated that he had "no problems of . . . keeping the [protection] order going" but he contested the locations from which he is excluded. Specifically, he objected to the Indian Center being a prohibited location because it has "everything to do with me and not her." He also stated that he has always attended powwows

and at the UNL powwow referenced by Donita he had been contracted to provide food and could not leave.

Deveron acknowledged that he had been convicted of violation of a protection order and disturbing the peace (which was reduced from the original charge of domestic violence) but clarified that the charge arose from a prior protection order and there were no such charges or incidents relating to the March 2024 protection order, which Donita desired to extend. He further explained that his conviction for violating the prior protection order was based upon him responding to a text from Donita. Deveron testified that he was currently on probation for the prior convictions and that his probation extended to January 2026. He denied intimidating Donita during child exchanges and stated that he suggested the exchanges occur at the police station, where there are cameras to protect himself from false accusations.

Following the hearing, the district court dismissed the ex parte renewal of the domestic abuse protection order because "[t]he matter continues to appear to be that of custody and sufficient evidence was not presented for affirming the renewal." Donita has timely appealed to this court.

## ASSIGNMENT OF ERROR

Donita's sole assignment of error is that the district court erred in dismissing the ex parte renewal of her domestic abuse protection order.

## STANDARD OF REVIEW

The grant or denial of a protection order is reviewed de novo on the record. *Diedra T. v. Justina R.*, 313 Neb. 417, 984 N.W.2d 312 (2023). In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. *Id*. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Garrison v. Otto*, 311 Neb. 94, 970 N.W.2d 495 (2022).

## ANALYSIS

Donita's sole assignment of error is that the district court erred in dismissing the ex parte renewal of her domestic abuse protection order against Deveron.

Recently, in *Garrison v. Otto*, 311 Neb. at 103-06, 970 N.W.2d at 502-04, the Nebraska Supreme Court addressed what findings are necessary to support the renewal of a domestic abuse protection order:

Under the Protection from Domestic Abuse Act, "[a]ny victim of domestic abuse" may seek a domestic abuse protection order. Subsection (1)(b) of § 42-924 provides that the "petition for a protection order shall state the events and dates or approximate dates of acts constituting the alleged domestic abuse, including the most recent and most severe incident or incidents."

In the context of a court's deciding whether to affirm or rescind the initial ex parte protection order, we have held that whether domestic abuse occurred is a threshold issue, and absent abuse as defined by § 42-903, a protection order may not remain in effect. "Abuse" is statutorily defined as the occurrence of one or more of the following acts

between family or household members: (1) attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument; (2) placing, by means of credible threat, another person in fear of bodily injury, or (3) engaging in sexual contact or sexual penetration without consent as defined in Neb. Rev. Stat. § 28-318 (Cum. Supp. 2020). Family or household members includes former spouses.

We have also held, in the context of a court's decision to affirm or rescind an initial ex parte protection order, that a finding that domestic abuse has occurred does not end a court's inquiry. In *Maria A. on behalf of Leslie G. v. Oscar G.*, [301 Neb. 673, 919 N.W.2d 841 (2018),] we explained that the goal of domestic abuse protection orders is to protect victims of domestic abuse from further harm. Thus, the court must conduct a wider inquiry that weighs the likelihood of future harm to the petitioner in light of all the surrounding circumstances. We noted that we have repeatedly analogized domestic abuse protection orders to injunctions, which sound in equity. And injunctions are not meant to punish past actions but to prevent future mischief. On a consideration of all the circumstances of each case, the court, before issuing an injunction, weighs the burdens the order will inflict against its benefits.

We accordingly held that in considering whether to continue an ex parte domestic abuse protection order following a finding that domestic abuse has occurred, a court is not limited to considering only whether the ex parte order was proper, but may also consider a number of factors pertinent to the likelihood of future harm. Those factors might include, but are not limited to, the remoteness, severity, nature, and frequency of past abuse; past or pending credible threats of harm; the psychological impact of domestic abuse; the potential impact on the parent-child relationship; and the nuances of household relationships. With respect to the factor of remoteness, we have observed that the statutory scheme does not impose any limitation on the time during which a victim of domestic abuse may file a petition and affidavit seeking a protection order after the abuse.

Under § 42-924(3), the protection order is generally effective for a period of 1 year, "unless dismissed or modified by the court prior to such date." But, under § 42-924(3)(b), any victim of domestic abuse may, within 45 days before expiration, file a petition and affidavit to renew a protection order. Section 42-924(3)(b)(ii) indicates that the petition for renewal shall state that "there has been no material change in relevant circumstances since entry of the order" and set forth "the reason for the requested renewal." The renewed protection order is effective for 1 year.

Thus, as opposed to the underlying petition and affidavit for the underlying order, in which petitioner "shall state the events and dates or approximate dates of acts constituting the alleged domestic abuse," the petition and affidavit for renewal must state "there has been no material change in relevant circumstances since entry of the order" and "the reason for the requested renewal." The Protection from Domestic Abuse Act does not otherwise elaborate on what the district court must find in order to renew the protection order. However, the renewed protection order necessarily shares the same fundamental characteristics of the original protection order. The renewed protection order must,

therefore, be supported by the same statutory and equitable considerations as an original order.

As "no material change in relevant circumstances" suggests, the requisite past act of domestic abuse is necessarily found in relation to the underlying protection order and is not to be relitigated simply because the petitioner seeks a renewal of the order. Principles of law of the case generally bar reconsideration of the same or similar issues at successive stages of the same suit or prosecution. There is nothing in the statutory scheme suggesting that a new act of abuse is a prerequisite for renewal of a domestic abuse protection order or that a petition for renewal gives the respondent an opportunity to relitigate the prior finding of abuse that was foundational to the underlying protection order.

On the other hand, the statutory scheme can be read to suggest that an evidentiary hearing on the petition for renewal should be held unless the respondent fails to appear or indicates he or she does not contest the renewal. Section 42-924(3)(b) states that the protection order "may be renewed on the basis of the petitioner's affidavit" when the petitioner seeks no modification of the order and either (1) the respondent has been properly served with notice of the petition for renewal and notice of hearing and fails to appear at the hearing or (2) the respondent indicates that he or she does not contest the renewal. The statute is silent as to the standard governing renewal if an evidentiary hearing is held.

The purpose of that hearing is to receive evidence so that the court may reweigh the burdens the order will inflict against its benefits in light of all the relevant circumstances, including what has or has not changed since its issuance. A protection order upon renewal, just as at its inception, is oriented toward the future with the goal to protect victims of domestic abuse from further harm. . . .

Here, following Donita's initial request for a domestic abuse protection order, which was granted on March 18, 2024, Donita sought to "[reinstate] the protection order because [Deveron] continues to be abusive and harass me." Donita described an incident on March 8, 2024, wherein Deveron assaulted her in her home; and when Deveron was arrested, his "bond on the charge of violation of protection order was revoked." Donita referenced previously filing protection orders, which she appeared to have attached to her request, and referenced that Deveron had two pending criminal court cases with no contact orders in place for her and her home as a condition of his bond. Following the issuance of the initial protection order, it was subsequently modified at Donita's request to permit the parties to communicate via phone for the "sole purpose of speaking with the children."

During a May 2024 hearing on Deveron's motion to modify the protection order as it related to the restricted locations, Deveron was asked whether he was facing criminal charges involving a violation of the protection order. At that time, Deveron's counsel objected, and the court sustained the objection, on the basis that the criminal charges that were filed were for a separate protection order. Donita acknowledged that she had previously filed three other requests for a domestic abuse protection order.

In her March 2025 petition to renew the 2024 domestic abuse protection order, Donita indicated "N/A" on the Nebraska State Court Form under the printed statement that "there have been no material changes in relevant circumstances since the entry of the order." Donita further indicated that she was seeking a renewal of the protection order because during the year that the protection order was in place, Deveron had violated the protection order several times; he had been arrested and charged several times for violation of the protection order and domestic violence; he continued to intimidate her by way of threats, by attending community events that she alleged he knew that she and the children had attended for years, and by joining the board at the Indian Center, which was a location that the initial protection order specifically restricted Deveron from visiting.

Ater the district court entered an ex parte order in March 2025 granting Donita's request to extend the March 2024 protection order, a contested hearing was held at Deveron's request. During the contested hearing, Donita testified that since the initial protection order was filed in March 2024, there had been 10 new occurrences involving Deveron, which caused her to fear for her safety, including three incidents where Deveron became aggressive with her during child exchanges; one incident when Deveron attended a powwow that he knew their children were involved in, he refused to leave, and he intimidated her to such an extent that she and the children left the event; other instances where Deveron contacted her friends as a means to communicate with her; and instances where Deveron came to her home and physically assaulted her. Donita also testified that Deveron had been charged with violation of the protection order, arrested for numerous violations, and had been placed on probation in approximately May 2024.

Although Donita suggested that new instances occurred after the issuance of the March 18, 2024, protection order, Donita's testimony appeared to conflate or confuse the timing of incidents and their relation to a prior protection order that she dismissed and incidents that occurred after the entry of the March 18, 2024, protection order. For example, Donita testified that following the March 8, 2024, physical assault that formed the basis of the allegations in her March 2024 petition to obtain a domestic abuse protection order, there were other incidences where Deveron was violent with her and Deveron was subsequently arrested and charged. Although she stated she was unsure of the dates of those incidents, she testified that she reported the incidents to law enforcement. Upon further questioning, Donita asserted that there were several police calls and case numbers provided "that were submitted in the last hearing and were included in [Deveron's] arrest." And although Donita asserts that these new occurrences warrant the renewal of the protection order, Deveron specifically denied violating the protection order or being arrested following the issuance of the March 18, 2024, protection order, with the exception of one arrest after communicating with Donita's friend, which charge was later dropped or dismissed.

Deveron admitted that since the entry of the March 2024 protection order, he had been convicted of violation of a protection order and disturbing the peace, but maintained that he was arrested for disturbing the peace during a period of time between Donita dismissing a request for a protection order and a new protection order being issued. He further stated that he did not believe that his conviction for disturbing the peace formed the basis for this conviction for violating a protection order.

Deveron also disputed Donita's testimony that he intimidated and threatened her during child exchanges, noting that, at his request, the child exchanges occurred at the police station where

cameras would capture images of the exchanges to protect him in the event that Donita made allegations relating to the exchanges. Deveron also testified that although he was appointed as a board member at the Indian Center, he participated in board meetings via Zoom and had not been physically present at the Indian Center. Further, he testified that he could not leave the powwow because he was contracted as a food vendor for the event, and he denied approaching or intimidating Donita at the powwow. And although Donita contacted law enforcement after approaching Deveron and telling him to leave the powwow, Deveron testified that he was not arrested or cited for any violation of the protection order as a result of his attendance at the powwow.

Deveron specifically denied violating the present protection order and indicated that Donita used the protection orders as a "shield and sword just to keep me away from going forward with my life." Deveron stated that he had

> no intention of contacting her. I've never been aggressive towards her. That's why we go to the Swap Spot is for my protection. She says stuff like that. She doesn't have any evidence of police calls or anything that I've done to violate the order. She keeps saying I've done all this stuff and I haven't.

The district court, having been involved since the initial request for the protection order and having witnessed and observed the parties, found that sufficient evidence was not presented to affirm the renewal of the protection order. We agree.

The record reveals that Donita and Deveron provided conflicting testimony. Although Donita contends that she contacted law enforcement at least a handful of times since the issuance of the March 2024 protection order, that Deveron had been arrested multiple times since, and that he had been charged with further violations of the protection order, the only evidence as to those allegations is the conflicting testimony of the parties. Here, the district court observed the witnesses and apparently found Deveron's testimony to be more credible than Donita's. In cases such as this, although our review of domestic abuse protection orders is de novo, we give deference to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Garrison v. Otto,* 311 Neb. 94, 970 N.W.2d 495 (2022).

Based on our de novo review, we have weighed the likelihood of future harm to Donita in light of the surrounding circumstances; weighed the burdens a continuance of the protection order would inflict against its benefits; and considered that protection orders are not meant to punish past actions, but rather prevent future mischief. Based upon these considerations, and giving deference to the circumstances that the district court heard and observed the witnesses, we cannot say that the district court erred denying Donita's request to renew the domestic abuse protection order for lack of sufficient evidence.

## CONCLUSION

For the reasons stated above, we affirm.

AFFIRMED.

PIRTLE, Judge, participating on briefs.