IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LUBERSKI V. LUBERSKI

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEFFREY LUBERSKI ET AL., APPELLEES,

V.

PATRICIA LUBERSKI, APPELLANT.

Filed August 22, 2023.    No. A-22-838.

Appeal from the District Court for Platte County: DENISE J. KRACL, Judge. Judgment vacated, and cause remanded with direction.

William M. Kurtenbach, of Law Office of William M. Kurtenbach, for appellant.

No brief for appellees.

BISHOP, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

INTRODUCTION

Jeffrey Luberski, on behalf of himself and his three minor children, filed a petition for a domestic abuse protection order against Patricia Luberski, his ex-wife and the mother of his children. The district court entered an order to show cause, setting a hearing date. After the hearing, the district court entered a domestic abuse protection order against Patricia and in favor of Jeffrey and the three children. Patricia appeals from the district court's order. On appeal, she asserts that the district court erred in finding sufficient evidence to warrant granting the protection order. For the reasons set forth herein, we vacate the court's order granting the protection order and remand for further proceedings.

- 1 -

BACKGROUND

On September 20, 2022, Jeffrey filed a petition in the district court requesting a domestic abuse protection order against Patricia for himself and his three minor children. Attached to Jeffrey's petition was an affidavit containing allegations to support his request. The preprinted form asks the affiant to list the most recent and the most severe incidents of domestic abuse. In Jeffrey's affidavit he describes various incidents which occurred from March through September.

In his affidavit Jeffrey first alleges that in July 2022, Patricia was charged with two counts of "felony child abuse" after their 13-year-old daughter reported to a camp counselor that Patricia had abused her. Jeffrey does not allege the specific facts giving rise to the child abuse charges, only explaining that the charges are for incidents which occurred between January and July and which involved all three of the children. In addition, he states that "[t]here have been other abuse reports filed for incidents that occurred in Omaha. Over the past several years there has been continuous physical and verbal abuse on our children. I have multiple complaints filed with CPS in Alaska, Colorado and in Nebraska for child abuse, alcoholism, and harassment."

The next incident described in Jeffrey's affidavit occurred in March 2022. Jeffrey alleges that at that time, the children were with Patricia and a third person at an undisclosed location. The third party telephoned Jeffrey to alert him that Patricia was "heavily intoxicated" and attempting to drive away with the children in the car. When this person tried to stop Patricia from leaving with the children, Patricia repeatedly crashed her vehicle into his vehicle. Jeffrey indicates that Patricia was criminally charged with criminal mischief as a result of this incident.

Jeffrey alleges that in late July 2022, the parties' 13-year-old daughter received three telephone calls from someone claiming to be employed by Child Protective Services (CPS). This person questioned their daughter about whether she loved Patricia and whether she knew that Patricia may go to jail for a long time. These calls made their daughter "uncomfortable." Jeffrey alleges that he later learned the caller was not employed by CPS, but he does not allege that the caller was Patricia or that she was involved with the calls.

Jeffrey alleges three incidents occurred in August 2022. First, Jeffrey indicates that despite being ordered to have no contact with the children as a result of the pending child abuse charges, Patricia has continued to go to their school, to contact them through social media and through third parties, and to appear near his residence. Jeffrey asserts that such conduct is "deeply upsetting to me and my children." Relatedly, Jeffrey alleges in his affidavit that on August 30, he and the children observed Patricia at a gas station near his home which they regularly frequent. He alleges that the children were surprised to see Patricia there. He also alleges, "I think she is stalking us because she doesn't even live in Omaha," where he resides.

On August 17, 2022, Jeffrey was informed by a friend that the friend had called the local sheriff's office to conduct a welfare check on Patricia, who had make suicidal statements. When law enforcement arrived at Patricia's home, she initially refused to come out, but subsequently came out of the house wearing only a bathrobe and refused a breathalyzer test.

In his affidavit, Jeffrey alleges that on September 14, 2022, an employee at their 9-year-old son's elementary school pulled him into a closet and told him to say, "I love you, mom" while she filmed him. Jeffrey explains that this employee is a friend of Patricia's, but does not otherwise

explain how Patricia was involved with this incident. Jeffrey also alleges that three days after this incident, on September 17, Patricia texted him and accused him of "kidnapping" their children.

At the end of his affidavit, Jeffrey generally alleges, without providing any specific dates or facts, that Patricia has a history of substance abuse and a pattern of abusive and harassing behavior. He asks the court to award he and the children a protection order "for our safety, peace of mind, and to keep the harassment from continuing."

Based on Jeffrey's petition and affidavit, the district court entered an order to show cause, but did not enter an ex parte protection order. The order to show cause set a hearing date and indicated that Patricia "may appear and show why a domestic abuse protection order should not be issued . . . as requested by [Jeffrey]." It also directs Jeffrey as follows: "You must appear at the place, date and time shown to show cause why a Protection Order should be entered. Failure to appear may result in the Protection Order not being issued."

On October 6, 2022, the show cause hearing was held. Jeffrey appeared pro se at the hearing and Patricia appeared with counsel. At the start of the hearing, the district court received into evidence a copy of Jeffrey's petition and affidavit requesting a domestic abuse protection order. The court then asked Patricia if she had any evidence to show why the domestic abuse protection order should not be issued in this case. Patricia indicated her intent to call Jeffrey to testify. Prior to Jeffrey's testimony, the district court granted Patricia's motion to sequester potential witnesses and asked two of the parties' children who were present in the courtroom to wait outside. The court noted that "[p]art of the allegations involve or have to do with the kids and so they potentially could be witnesses."

During Jeffrey's testimony, Patricia's counsel asked him about each allegation of abuse contained in his affidavit, except the allegation relating to Patricia's pending child abuse charges. When asked about the incident that occurred in March 2022, when Jeffrey was informed that Patricia attempted to drive with the children while she was intoxicated, Jeffrey testified that he did not personally witness this incident and was only informed about it through others, including his children. Because Jeffrey did not have personal knowledge of the incident, the court explained to him that someone with personal knowledge, like the children, would have to testify about the things that they actually saw and heard.

As to the July 2022 incident when the parties' daughter received multiple telephone calls from someone claiming to be employed by CPS, Jeffrey testified that while he believed the calls were made by Patricia or at her behest, he had no actual proof of her involvement. The person on the telephone never identified themselves as Patricia and the calls came from a blocked phone number. Jeffrey did testify that Patricia has engaged in similar behavior prior to these telephone calls. Ultimately, Jeffrey indicated that despite whether Patricia was involved in the telephone calls, there were no threats made during the calls and no one suffered physical harm as a result of the calls.

Jeffrey testified that Patricia's appearance at the gas station near his home on August 30, 2022, was unexpected because Patricia does not live anywhere near that gas station. However, he also testified that the gas station is open to the public and that Patricia did not make any threats or cause any physical harm while present at the gas station.

When asked about the incident that occurred at the parties' youngest son's elementary school in September 2022, Jeffrey testified that he could not definitively say that Patricia was

involved with the employee's actions when she pulled their son into a closet and recorded him, but he strongly believes Patricia had a role in the incident. Jeffrey further testified that while their son felt really bad after the incident, he was not threatened in any way and the only physical harm came from the school employee grabbing his arm.

As to the text message that Jeffrey alleged Patricia sent to him on September 17, 2022, accusing him of kidnapping the children, Jeffrey testified that Patricia used an "anonymous" phone number when sending the text message. He also indicated that the message did not contain a threat of physical harm.

At the end of his testimony, Jeffrey testified that, ultimately, he was hoping to be awarded full custody of the parties' three children on a permanent basis. In addition, he was hoping that in the next few years, he and the children could move away from Nebraska.

After Patricia's counsel finished questioning Jeffrey, Patricia rested her case. The district court then asked Jeffrey if there was any other evidence that he intended to offer "[b]ased solely on the information that you have written in the protection order. . . ." Jeffrey responded, "Yes. Well, could I call on Patricia Luberski?" After a five minute recess, the court denied Jeffrey's request to call Patricia as a witness:

> I took a moment to just go back and do some legal research. I believe that all the evidence that the Court needs in order to make a proper decision in this case has been submitted, so [Jeffrey], we're not gonna allow you to call [Patricia] to the stand.
>
> Um, so this – the entry of evidence is concluded. No, we're not even talking about it. Entry of evidence is concluded. I'm gonna give you each about a two minute summation and that's it.

During Jeffrey's summation, he told the court,

> Um, I would very much like the opportunity to have people victimized by [Patricia] be able to make statements. These are – my children have been routinely brutalized, traumatized by her for years. I would very much appreciate if they could be heard for what they have to say.
> . . . .
> We went over today and the only thing that was established by the defense is that on a couple of different days, [Patricia] didn't hurt [the children]. Well, there was plenty of other days that she did. And she wants to do that from now going forward. The closer she gets to them, the more in danger they are. And they will tell you that and they want to tell you that. That's why they're here.

After the hearing, on October 11, 2022, the district court entered an order granting Jeffrey's request for a domestic abuse protection order against Patricia and on behalf of Jeffrey and the children. The order enjoined and prohibited Patricia from threatening, attacking, or otherwise disturbing the peace of Jeffrey and the children; from telephoning or otherwise communicating with Jeffrey and the children; and from visiting Jeffrey's home or the children's schools. In addition, Jeffrey was awarded temporary custody of the children until at least November 11, 2022.

Patricia appeals from the district court's order granting the domestic abuse protection order against her.

## ASSIGNMENT OF ERROR

On appeal, Patricia asserts that the district court erred in determining that Jeffrey produced sufficient evidence to grant the protection order against her.

## STANDARD OF REVIEW

A domestic abuse protection order is analogous to an injunction. See *Robert M. on behalf of Bella O. v. Danielle O.*, 303 Neb. 268, 928 N.W.2d 407 (2019). Thus, the grant or denial of a protection order is reviewed de novo on the record. In such de novo review, an appellate court reaches conclusions independent of the factual findings of the trial court. However, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the circumstances that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Maria A. on behalf of Leslie G. v. Oscar G.*, 301 Neb. 673, 919 N.W.2d 841 (2018).

## ANALYSIS

Before proceeding to Patricia's arguments, we briefly review the law governing domestic abuse protection orders. Under the Protection from Domestic Abuse Act (the Act), Neb. Rev. Stat. § 42-901 et seq. (Reissue 2016 & Cum. Supp. 2022), "[a]ny victim of domestic abuse" may seek a domestic abuse protection order. § 42-924. Whether domestic abuse occurred is a threshold issue in determining whether an ex parte protection order should be affirmed; absent abuse as defined by § 42-903, a protection order may not remain in effect. § 42-924. See *Maria A. on behalf of Leslie G. v. Oscar G., supra*. See, also, *Linda N. v. William N.*, 289 Neb. 607, 856 N.W.2d 436 (2014).

For purposes of the Act, "[a]buse" is defined by § 42-903(1) as the occurrence of one or more of the following acts "between family or household members":

> (a) Attempting to cause or intentionally and knowingly causing bodily injury with or without a dangerous instrument;
>
> (b) Placing, by means of credible threat, another person in fear of bodily injury. . . . or
>
> (c) Engaging in sexual contact or sexual penetration without consent as defined in section 28-318."

Family or household members include former spouses, children, and persons who have a child in common. § 42-903(3).

On appeal, Patricia alleges that the petition and affidavit filed by Jeffrey fails to establish any abuse as defined by § 42-903:

> None of the specific dates listed in the [p]etition provide grounds for the [district] court to consider the conduct of [Patricia] as abuse. The [p]etition fails to state that on any of the occasions that [Patricia] attempted to cause or intentionally and knowingly caused bodily injury, placed, by means of credible threat, another person in fear of bodily injury, or engaged in sexual contact or sexual penetration without consent.

Brief for appellant at 12. Upon our review, we find that Patricia's assertion has merit.

- 5 -

Even if we were to assume that each of the allegations in Jeffrey's petition and affidavit were true, such allegations simply do not rise to the level of "abuse," as that term is contemplated in § 42-903. Jeffrey does not allege that Patricia caused any physical harm to him or the children or that she engaged in any inappropriate behavior which could be construed as a credible threat of bodily injury. In fact, during Jeffrey's testimony at the show cause hearing, he explicitly indicated that the incidents described in his petition and affidavit did not involve Patricia making credible threats of bodily injury or her causing bodily injury. The assertions in the petition and affidavit appear more akin to incidents of harassment, rather than incidents of domestic abuse.

We note that in the petition and affidavit, Jeffrey does allege that Patricia was recently criminally charged with two counts of felony child abuse as a result of certain behaviors involving the parties' three children. Such an allegation could demonstrate "abuse" pursuant to § 42-903, but because Jeffrey does not allege the specific facts and circumstances underlying these charges, we cannot discern whether such acts would be sufficient to warrant the entry of a domestic abuse protection order. Specifically, we are unable to discern whether Patricia's criminal charges for child abuse were the result of Patricia's negligent or intentional bad acts. See Neb. Rev. Stat. § 28-707 (Cum. Supp. 2022). We are also unable to discern if Patricia's behavior which gave rise to the criminal charges resulted in any of the children suffering bodily injury. See *id.*

Because Jeffrey failed to sufficiently demonstrate any evidence of domestic abuse pursuant to § 42-903, we cannot affirm the decision of the district court to enter the protection order against Patricia. However, our inquiry does not end there. At the show cause hearing, the district court declined to allow Jeffrey to present any evidence beyond the petition and affidavit to support his request for the domestic abuse protection order. The district court made this ruling despite previously informing Jeffrey in the order to show cause that he needed to appear at the hearing prepared to "show cause why a Protection Order should be entered;" despite the court's asking Jeffrey if he had any other evidence to present; and despite Jeffrey's clear indication to the court that, at a minimum, he wished to call three witnesses to the stand, Patricia and the two children that were present at the hearing.

Jeffrey has not filed a brief in this appeal and, as a result, he does not contest the district court's decision to deny him the opportunity to present further evidence in favor of issuing the protection order. Nevertheless, we find the district court's denial of Jeffrey's request to present further evidence to be plain error. The decision to proceed on plain error is at the discretion of the appellate court. *Steffy v. Steffy*, 287 Neb. 529, 843 N.W.2d 655 (2014). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

Here, the district court did not issue an ex parte domestic abuse protection order based on Jeffrey's initial request. Rather, the district court held a show cause hearing so that both Jeffrey and Patricia could offer evidence regarding whether the entry of a domestic abuse protection order against Patricia was warranted. A show cause hearing in protection order proceedings is a contested factual hearing, in which the issues before the court are whether the facts stated in the sworn application are true. See *Hawkins v. Delgado*, 308 Neb. 301, 953 N.W.2d 765 (2021). At the show cause hearing, the court received into evidence the petition and affidavit authored by Jeffrey and allowed Patricia to present evidence in opposition to the entry of the protection order. However, the court then denied Jeffrey an opportunity to present further evidence to support his

request for the protection order. This decision by the district court is particularly confounding given the court's implicit finding that an ex parte protection order was not warranted on the basis of the petition and affidavit alone and given Jeffrey's explicit request to call Patricia to the stand and his indication to the court that his children were present, ready, and willing to testify about their experiences with Patricia. Jeffrey had agreed to abide by the court's instructions to limit his presentation of evidence to the allegations raised in the petition and affidavit. Nonetheless, he was denied any ability to present further evidence regarding these allegations.

As we noted above, in Jeffrey's petition and affidavit, he alleged that Patricia had recently been criminally charged with two counts of felony child abuse. Because Jeffrey was not permitted to offer any evidence at the show cause hearing beyond the petition and affidavit, he was unable to provide any additional facts regarding these charges. Such additional facts could have demonstrated that Patricia had threatened the children with bodily injury or that she had inflicted bodily injury on the children in some manner. Such evidence would clearly be relevant to whether the domestic abuse protection order against Patricia should have been issued. Accordingly, we find that the district court committed plain error in denying Jeffrey the opportunity to present evidence at the show cause hearing.

## CONCLUSION

Based on our de novo review of the evidence presented both in the petition and affidavit and at the show cause hearing, we find that the district court erred in granting Jeffrey the domestic abuse protection order against Patricia. We, thus, vacate that order. However, we also find plain error in the district court's decision to deny Jeffrey the opportunity to present evidence beyond his petition and affidavit at the show cause hearing. As such, we remand the cause back to the district court for further proceedings where Jeffrey can present evidence in favor of his request for a domestic abuse protection order. Based upon this evidence, the district court should consider whether a protection order is warranted.

JUDGMENT VACATED, AND CAUSE REMANDED WITH DIRECTION.